# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS .................................................................................................................. 2

III.    LAW AND ARGUMENT ..................................................................................... 4

        A.      Motion for Summary Judgment Standard. ............................................... 4

        B.      Plaintiff Cannot Sustain a Procedural Due Process Claim Against
                Defendant Van Horne in His Individual Capacity. .................................. 5

        C.      Plaintiff Cannot Sustain a Substantive Due Process Claim Against
                Defendant Van Horne in His Individual Capacity. .................................. 8

        D.      Plaintiff Cannot Sustain an Equal Protection Claim Against Defendant in
                His Individual Capacity. ......................................................................... 9

        E.      Plaintiff Cannot Sustain Either a Due Process or Equal Protection Claim
                Against Defendant Van Horne in his Official Capacity. ..................... 11

        F.      Plaintiff's Claims are barred Against Defendant Van Horne Pursuant to
                the Doctrine of Qualified Immunity. ................................................... 12

        G.      Plaintiff Cannot Sustain a Defamation Claim Against Defendant. ...... 14

        H.      Plaintiff's Intentional Infliction of Emotional Distress Claim is
                Unsustainable. ...................................................................................... 16

        I.      Plaintiff's Gross Negligence Claim Against Defendant in his Official
                Capacity Must Fail as a Matter of Law Pursuant to Ohio's Sovereign
                Immunity Statute. ................................................................................. 18

        J.      Plaintiff's Gross Negligence Claim is Barred by the Ohio Sovereign
                Immunity Statue Against Defendant in his Individual Capacity. ........ 19

IV.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver* (1994), 510 U.S. 266 ............................................................................. 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................... 5, 13

*Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App. 3d 359 .............................................. 17

*Bel-Bey v. Williams* 87 F.3d 832 (6th Cir. 1996) ................................................................ 12

*Brosseau v. Haugen* (2004), 543 U.S. 194 .......................................................................... 13

*Brown v. Denny* (1991), 72 Ohio App. 3d 417 .................................................................... 17

*Carter v. Cleveland* (1998), 83 Ohio St.3d 24 .................................................................... 18

*Celotex Corp. v. Catrett* (1986), 477 U.S. 317 ................................................................... 5

*Church v. Feleishour Homes, Inc.* (2007), 172 Ohio App. 3d 205 ....................................... 19

*City of Los Angeles v. Heller* (1986), 475 U.S. 796 ............................................................ 12

*County of Sacramento v. Louis* (1998), 523 U.S. 833. ....................................................... 8

*Deem v. Columbus Southern Power Co.*, 2007-Ohio-4404 (Ohio App. 4th Dist.) ............... 19

*Franks v. Lopez* (1999), 69 Ohio St.3d 345 ...................................................................... 18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................................... 13

*Harsh v. Lorain Cty. Speedway, Inc.* (1996), 111 Ohio App.3d 113 ................................... 20

*J-II Enters. v. Bd. of Comm'rs*, 135 Fed. Appx. 804  (6th Cir. 2005) ................................. 8

*Kanjuka v. MetroHealth Med. Center* (2002), 151 Ohio App. 3d 183 ................................ 15

*Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010.) ........................................... 6

*Kentucky v. Graham* (1985), 473 U.S. 159 ....................................................................... 11

*Klimik v. Kent. Cty. Sherriff's Dep't.*, 91 F. Appx. 396 (6th Cir. 2004) .............................. 6

*Leech v. Shelby County Sheriff*, 891 F.2d 1241 (6 Cir. 1989) ............................................ 11

*Levine v. Pennsylvania State Police*, 2007 WL 3033951 (M.D. PA., 2007) ......................... 10

ii

*Lombardo v. Mahoning* 2009-Ohio-5826, (Ohio App. 8 Dist.)................................................... 17

*Macene v. M.J.W., Inc.*, 951 F.2d 700 (6th Cir. 1991) ............................................... 6, 8

*Malley v. Briggs* (1986), 475 U.S. 335 ................................................................ 13

*Monell v. Dep't. of Soc. Servs. (1978), 436 U.S. 658* ......................................... 11, 12

*Nunn v. Lynch*, 113 Fed. Appx. 55 (6th Cir. 2004)............................................................ 7

*Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006) ........................................... 12

*Polk County v. Dottson*, 454 U.S. 312 (1981) ......................................................... 12

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005)........................... 9, 10

*Ratkosky v. CSX Transp., Inc.* 2009-Ohio-5690 (Ohio App. 8 Dist.)........................... 14, 15, 16

*Robinson v. Bates* (2006), 112 Ohio St. 3d 17................................................. 19

*Saucer v. Katz* (2001), 533 U.S. 194.............................................................. 13

*Smoke v. Hall*, 406 F.3d 768 (6th Cir. 2006) .................................................... 12

*State ex rel. Estate of Miles v. Village of Piketon* (2008), 121 Ohio St. 3d 231 ..................... 18

*Torbet v. Young* 1915 WL 894 (Ohio App. 5 Dist.) ............................................ 19

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ......................................... 10

*Warren v. City of Athens, Ohio*, 411 F.3d 697 (6th Cir. 2005.)................................ 11

*Williams v. Town of Greenburgh*, 535 F.3d 71 (2nd Cir. 2008) .................................. 6, 7, 10, 13

**Statutes**

Ohio Revised Code § 2744.02(A)(1) ............................................................ 18

Ohio Revised Code § 2744.02(B)................................................................ 18, 19

OhioRevised Code § 2744.03(A)(6) ............................................................ 17, 18, 19, 20

**Rules**

Federal Rule of Civil Procedure 56(e) .......................................................... 5

<u>**BRIEF IN SUPPORT**</u>

**I.     INTRODUCTION**

This case arises out of the events that occurred during attempts to resolve prior litigation between the parties.  In an attempt to resolve said dispute and litigation surrounding it, the parties agreed that Plaintiff's property taxes would be recalculated and reduced for a total savings that would fall within a certain range provided by the court.  Defendant refigured Plaintiff's property taxes and reducing said taxes to an amount that fell with the range provided by the court.

Nevertheless, Plaintiff went to Defendant's place of work to demand an explanation for the amount of the aforementioned refund.  However, the individual who had calculated Plaintiff's refund, Donna Detchon, was out of the office.  Despite knowing this, Plaintiff did not leave, but stayed to speak to Defendant.

Plaintiff began to insult Defendant and accuse him of stealing money from the public.  Defendant, asked Plaintiff to leave, but Plaintiff refused.  Defendant also asked Plaintiff to speak directly to Defendant's attorney.   Plaintiff remained in the Auditor's Office, but by his own admission wanted to leave, and turned around to do so before noticing that security had been called by Defendant, who was standing by the door.  Plaintiff walked out the door and towards the stairs, which would lead him to the first floor of the courthouse in which Plaintiff's office was located.  The security guards did not walk down the stairs with Plaintiff, nor did they instruct Plaintiff to leave the office, building or premises in any manner.  Plaintiff claims that Defendant's calling of security violated his constitutional rights and constituted state tort claims.  Plaintiff's claims, however, are legally untenable, as subsequently demonstrated in this brief.

## II.    FACTS

Plaintiff originally sued Defendant in 2008 in Carroll County State Court, for claims allegedly arising out of the appraisal of Plaintiff's properties and the taxes assessed on said properties.  (See attached,  Exhibit "A" - Plaintiff's Deposition at pp. 13-14; see attached Exhibit "B"- Van Horne Deposition at p. 138.) That case was removed to federal court by Defendant. Two attempts were made to resolve this prior litigation.

During the first attempt, the general agreement that would ultimately prove successful in resolving the matter was set forth, part of which included the following:  Plaintiff would receive a refund check for the amount of taxes he overpaid based upon a reconfiguration (lowering) of his assessed property values.  (Ex. "A" Plaintiff's Depo. at 80-82; Ex. "B"- Van Horne Depo. at pp. 138, 141.)  The amount of the refund was not specifically prescribed by the court.  Rather, the court provided a range within which the refund should fall.  (Ex. "A" Plaintiff's Depo. at pp. 80-81; Ex. "B"- Van Horne Depo. at pp. 138-139.)

The County Auditor's Office provided Plaintiff with the refund check, which fell within the aforementioned range specified by the court.  (Ex. "A" Plaintiff's Depo. at pp. 81-82.)  The refund check also included the figures and calculations used by the Auditor's office, specifically by Carroll County Auditor's Office employee Donna Detchon, in arriving at the refund figure. (Ex. "B"- Van Horne Depo. at pp.142-143; see attached Exhibit "C"-Lutton Deposition at pp. 14-16.)

Despite the fact the refund check was made out for an amount unquestionably within the acceptable range set by the settlement agreement, Plaintiff went to Defendant's place of business, the Carroll County Auditor's Office, which is located on the second floor of the Carroll

County Courthouse, (Ex. "B" Van Horne's Depo. at p. 64), seeking an explanation for the refund calculations. (Ex. "A" Plaintiff's Depo. at pp. 21-23, 84-85.)

When Plaintiff entered the Carroll County Auditor's Office, he approached the counter located inside the door. (Ex. "A" Plaintiff's Depo. at pp. 45-46.) At that time, Defendant was in his private office. (Id. at pp. 86-87; Ex. "B" Van Horne's Depo. at pp. 121-122.)

Plaintiff was greeted by Carroll County Auditor employee Carol Lutton. (Ex. "C" Lutton Depo. at pp. 13-14.) Ms. Lutton informed Plaintiff that the individual who had calculated Plaintiff's refund, Donna Detchon, was not in the office that day. (Id. at pp. 14-15.) Ms. Lutton then went to Defendant's office and informed him that Plaintiff was there to see him regarding the refund figures. (Id. at pp. 14-16; Ex. "B" Van Horne's Depo. at pp. 121-122.)

Defendant approached the counter opposite from Plaintiff, standing approximately 3-4 feet away from him. (Ex. "A" Plaintiff's Depo. at p. 91; Ex. "B" Van Horne's Depo. at p. 128.) Defendant told Plaintiff that if Plaintiff wanted to speak to anyone he should speak to Defendant's attorney, given the instructions of the court to that effect. (Ex. "B" Van Horne's Depo. at pp. 121-122.) In fact, Defendant left the counter and returned with his attorney's contact information and provided said information to Plaintiff. (Ex. "A" Plaintiff's Depo. at p.91-92, 96-97; (Ex. "B" Van Horne's Depo. at p. 123.)

At this point in time, Plaintiff began to make accusations against Defendant, stating that Defendant was stealing money from the public. (Ex. "B" Van Horne's Depo. at pp. 124-125.) Defendant, in defending himself, stated that if anyone was stealing money from the taxpayers it was Plaintiff by way of the aforementioned settlement agreement. (Id.)

Defendant then asked Plaintiff to leave. (Id. at pp. 125-126; Ex. "C"- Lutton Depo. at 25-26.) Plaintiff refused, and Defendant asked him again, and then a third time. (Ex. "B" Van

Horne's Depo. at pp. 125-127.)  Plaintiff claims that he wanted to leave after his encounter with Defendant, (Ex. "A" Plaintiff's Depo. at p.91), was "glad to go," (Id. at p. 100), and did not even know that security had been called to escort from the Office.  (Id. at pp. 91-92.)

In fact, Defendant turned around to leave, just as the two probation officers arrived at the door of the Office.  (Ex. "C"- Lutton Depo. at 31-32.)  Defendant, had called the officers by pressing a button located underneath the counter in the Office.  (Ex. "B" Van Horne's Depo. at pp. 125-126.)

Although they did not see the encounter between Plaintiff and Defendant as an emergency, the probation officers wanted to separate the two parties before the encounter escalated any further.  (See attached, Exhibit "D"- B. Fairclough Deposition at pp. 13, 16; See attached, Exhibit "E"- Smith Deposition at pp. 28-29.)

However, the officers did not instruct Plaintiff to leave to Office or come with them.  (Ex. "A" Plaintiff's Depo. at p. 100)  The officers did not touch, grab, or physically direct Plaintiff to come with them.  (Id.)  As Plaintiff stated, when Defendant told the officers he wanted Plaintiff out of the Office, Plaintiff "didn't wait."  (Id.)  The officers simply followed Plaintiff out of the Office, sharing a laugh together.  (Id. at pp. 99-101.)

Indeed, the security guards walked behind Plaintiff only a short distance and had left by the time Plaintiff reached the stairs leading to the first floor of the Courthouse.  (Id. at pp. 101-104; Ex. "D" B. Fairclough Depo. at 17.)  Plaintiff, simply walked down the steps and out the door.  (Ex. "A" Plaintiff's Depo. at p. 100-104.)

## III.    LAW AND ARGUMENT

### A.    Motion for Summary Judgment Standard.

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Federal Rule 56(e) provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Supreme Court has further explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322-23.

## B. Plaintiff Cannot Sustain a Procedural Due Process Claim Against Defendant Van Horne in His Individual Capacity.

In his Complaint, Plaintiff does not specify whether he is alleging a violation of substantive due process or procedural due process. For the purposes of this motion, Defendant shall assume that Plaintiff is alleging both procedural and substantive due process claims.

First, Defendant shall analyze Plaintiff's procedural due process claim.

In order to properly bring a procedural due process claim, a plaintiff must allege that he was deprived of either a property or liberty interest as a result of an "'established state procedure' that itself violates due process rights", or by "pleading and proving" that the deprivation was pursuant to a "random and authorized act," **and** that available state remedies are

5

inadequate. *Macene v. M.J.W., Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Here, Plaintiff fails to identify any property or liberty interest that he was allegedly denied by Defendant.

Indeed, to demonstrate possession of a protected property interest, a plaintiff must show that he has "a legitimate claim of entitlement to a particular benefit." *Klimik v. Kent. Cty. Sherriff's Dep't.*, 91 F. Appx. 396, 402 (6th Cir. 2004). While property interests protected by the due process clause "do not stem from the constitution but from independent sources such as state law", liberty interests "may derive from state law or from the due process clause itself." *Id.*

Here, Plaintiff has failed to allege, and certainly failed to prove, that he has any property interest created by state law or otherwise in remaining in the Carroll County Auditor's Office, especially after being told that the information he was seeking was not available, (Ex. "C" - Lutton Depo. at 14-15), and that Defendant would communicate only through his attorney, pursuant to the Defendant's understanding of the Court's instructions to the parties. (Ex. "A"- Plaintiff's Depo. at 91-92, 96-97.) Indeed, Defendant is unaware of any state law or official procedure or policy which would create such an entitlement.

Assuming arguendo that Plaintiff could establish some property interest, Defendant avers that any interest Plaintiff had in remaining in an Auditor's Office without the ability to gain the information he sought, and after being told Defendant would only speak through his attorney, would be "de minimis" and therefore unable to be the basis of a due process claim. See *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010.)

Furthermore, Plaintiff does not have a liberty interest in remaining in the Auditor's office. To be sure, while an individual may have a general right to move about public properties, (*Williams v. Town of Greenburgh*, 535 F.3d 71 (2nd Cir. 2008), 75-76; *Kennedy*, supra), a political subdivision's exclusion of an individual from one of its particular facilities does "not

deprive him of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Williams*, supra.

Here, as Plaintiff did not possess a liberty interest in remaining in the Carroll County Auditor's Office (while still being able to remain within the courthouse), Plaintiff certainly did not have an interest in remaining in the office after being informed that Plaintiff would not be able to receive the information he was seeking at that time, that Defendant would only speak through his attorney, and then refusing to leave after being asked multiple times to do so.

Furthermore, even if Plaintiff did have an interest in remaining in the Auditor's Office, Plaintiff relinquished such interest when he admittedly left the office voluntarily. (Ex. "A" Plaintiff's Depo. at pp. 91-92, 100; Ex. "C"- Lutton Depo. 31-32.) Indeed, Plaintiff's actions demonstrated his voluntary relinquishment of any alleged interest he may have possessed. See *Nunn v. Lynch*, 113 Fed. Appx. 55, 59 (6th Cir. 2004) (holding that an employee's resignation "even when doing so due to actions of defendants, is a relinquishment of his property interest and therefore he cannot maintain a claim for a deprivation of said property interest under the due process clause of the Fourteenth Amendment).

Here, Plaintiff "wanted out of [the office]", and in fact, the courthouse in general, and turned to leave prior to knowing that security was present. (Ex. "A" Plaintiff's Depo. at pp. 91-92, 100; Ex. "C"- Lutton Depo. 31-32.) Even assuming arguendo that Plaintiff left do to Defendant's alleged actions, Plaintiff's voluntary departure constituted a relinquishment of any interest relative to the due process clause of the Fourteenth Amendment.

Finally, assuming arguendo that Plaintiff did have a liberty and/or property interest in remaining in Defendant's Office, and that Plaintiff did not voluntarily relinquish that interest,

Plaintiff's claim must still fail as a matter of law, as Plaintiff has failed to even allege that such a deprivation occurred as a result of "established state procedure." See *Macene*, supra.

To be sure, Defendant avers that there is no "established state procedure" for expelling Plaintiff from his Office; as such Plaintiff can only allege a random and unauthorized act. However Plaintiff as failed to "plead and prove" a lack of an adequate state law remedy for his expulsion from the Office, and therefore his due process claim must fail as a matter of law. *Id*.

**C.     Plaintiff Cannot Sustain a Substantive Due Process Claim Against Defendant Van Horne in His Individual Capacity.**

Assuming for the purposes of this motion that Plaintiff has in fact alleged a substantive due process claim, Plaintiff is unable to sustain such a claim against Defendant in his individual capacity.

In order to establish a substantive due process claim, a plaintiff must first prove that he possesses a constitutionally protected property or liberty interest. *J-II Enters. v. Bd. of Comm'rs*, 135 Fed. Appx. 804, 807 (6th Cir. 2005).

As previously demonstrated, Plaintiff does not have either a property or liberty interested protected by the constitution or state law, in order to establish a substantive due process claim.

Furthermore, even if Plaintiff was able to establish he had a constitutionally protected liberty or property interest in remaining in the Carroll County Auditor's Office, Plaintiff must also, in order to sustain his substantive due process claim, establish that Defendant's conduct as alleged by Plaintiff "shocks the conscience." *County of Sacramento v. Louis* (1998), 523 U.S. 833.

In addition, courts have generally limited the protections of a substantive due process claim to the fundamental rights of marriage, family, procreation, and the right to bodily integrity.

*Albright v. Oliver* (1994), 510 U.S. 266, 273. In *Albright,* the United States Supreme Court noted that the court has been reluctant to expand the concept of substantive due process from these specific areas. *Id.*

Here, Plaintiff has failed to allege any violation of a fundamental right, or anything related to such a right. Furthermore, Defendant's alleged actions in asking Plaintiff repeatedly to leave and calling security when Plaintiff refused to leave the Carroll County Auditor's Office—after being told that the individual whom had the information Plaintiff sought was not in the Office—certainly is not conduct that "shocks the conscience." To the contrary, it would have been unreasonable for Defendant, who believed he was not supposed to be speaking with Plaintiff directly, to continue arguing with Plaintiff after giving Plaintiff the contact information for Defendant's attorney, and with Plaintiff having been informed that the information he allegedly sought was not available at that time. (Ex. "C"-Lutton Depo. at pp. 14-15.)

Based upon the foregoing, Plaintiff's substantive due process claim is unsustainable and should be dismissed.

**D.     Plaintiff Cannot Sustain an Equal Protection Claim Against Defendant in His Individual Capacity.**

In his Complaint, Plaintiff alleges that Defendant's alleged actions violated his right to equal protection of the laws under the Fourteenth Amendment.

The equal protection clause of the Fourteenth Amendment prohibits discrimination by the government that either targets a protected class of individuals based upon race, religion, color, etcetera, or their exercising of a fundamental right. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The equal protection clause also protects individuals from governmental actions that intentionally treat one differently than others similarly situated without

any rational basis for the difference in the treatment.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Here, Plaintiff has failed to claim and/or demonstrate that Defendant's alleged actions violated a constitutionally recognized fundamental right.  See *Williams*, supra.

Plaintiff has also failed to allege that he is a member of a suspect class.  Suspect and quasi suspect classes are those that have "been historically used for discrimination, such as race, national origin, religion, alienage, and gender[.]"  *Levine v. Pennsylvania State Police*, 2007 WL 3033951, p.2 (M.D. PA., 2007).  Plaintiff fails to allege that he was discriminated against by Defendant on the basis of his status relative to any of the aforementioned classes.  This leaves Plaintiff relying upon the "class of one" theory.  In order to prove a violation of the equal protection clause under said theory Plaintiff must demonstrate that:

> 1.) The defendant intentionally treated the plaintiff differently from other similarly situated; and
> 2.) There was no rational basis for the difference in said treatment.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff has failed to identify any individual who was treated differently from Plaintiff.  (Ex. "A"-Plaintiff's Depo. 159-161.)  However, assuming arguendo that Plaintiff had been treated differently relative to the majority of individuals coming into the Carroll County Auditor's Office, such fact, if true, is insufficient to sustain an equal protection claim.

Here, Plaintiff has failed to identify anyone who was in a similar situation as Plaintiff, *i.e.* an individual refusing to leave the auditor's office after being informed that the information he was requesting was not available, that the Auditor would only speak through his attorney, and being repeatedly asked to leave the Office.

Furthermore, courts will not overturn government action unless the differing treatment was irrational. (Citation Omitted.)  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 -711 (6th Cir. 2005.)

Here, even assuming arguendo Plaintiff was treated differently, Defendant's actions were rational, in that he understood the instructions from the Court to preclude his direct discussion of the case and its subject matter with Plaintiff until the case was concluded.  (Ex. "B" Van Horne Depo. at pp. 122-124.)  Defendant even informed Plaintiff of this, and provided Plaintiff with Defendant's attorney's contact information.   (Id. at p. 123.)   The litigation Plaintiff and Defendant were engaged in provided a rational basis for differing treatment.

Therefore based upon the foregoing, Plaintiff's equal protection claim should be dismissed by this Honorable Court.

**E.      Plaintiff Cannot Sustain Either a Due Process or Equal Protection Claim Against Defendant Van Horne in his Official Capacity.**

In his Complaint Plaintiff brings his aforementioned constitutional claims against Defendant in both his individual and *official* capacity.

A claim against a government official in his "official capacity" is simply "another way of pleading an action against an entity of which [the official] is an agent."  *Kentucky v. Graham* (1985), 473 U.S. 159, 165.  Here, said entity would in fact be Carroll County.

 "Before a local government can be held liable for injuries under Section 1983 ... Plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity."  *Leech v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6 Cir. 1989) (citing *Monell v. Dep't. of Soc. Servs. (1978), 436 U.S. 658*).  The local governments policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a

government body under Section 1983." *Polk County v. Dottson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, supra at 694).

However, the threshold requirement for governmental liability in a constitutional tort claim is that there must be an actual constitutional violation by an *individual* defendant. *City of Los Angeles v. Heller* (1986), 475 U.S. 796, 799. Because there is no violation of a constitutional right by Defendant, as has been previously demonstrated, there can be no liability for Carroll County in this case. Even assuming arguendo that Defendant in his individual capacity had violated one of Plaintiff's constitutional rights, there is not even an allegation on the part of Plaintiff that Defendant himself or Carroll County had an unconstitutional policy, custom or practice that was "the moving force" behind the alleged constitutional violation.

Therefore, as Plaintiff has made no allegation, and further has presented absolutely no evidence of an unconstitutional policy, custom or practice that was the moving force behind the alleged violation of the Plaintiff's constitutional rights, Plaintiff's constitutional claims against Defendant in his official capacity, *i.e.* Carroll County, must fail as a matter of law.

**F.      Plaintiff's Claims are barred Against Defendant Van Horne Pursuant to the Doctrine of Qualified Immunity.**

Qualified immunity is designed to protect public officials from the substantial cost, burdens, and interference of trials. *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006). The question of whether a defendant is entitled to qualified immunity is "purely legal," *Bel-Bey v. Williams* 87 F.3d 832, 836 (6th Cir. 1996), with the plaintiff having the "onerous" burden of demonstrating that the defendant is not entitled to said defense. *Smoke v. Hall*, 406 F.3d 768, 778 (6th Cir. 2006).

The first step in a qualified immunity analysis is to determine whether the defendant's conduct violated a constitutional right. *Saucer v. Katz* (2001), 533 U.S. 194. Here, as previously demonstrated, Plaintiff has failed to demonstrate that Defendant violated either his due process rights or his right to equal protection pursuant to the Fourteenth Amendment. However, if a constitutional violation is found, a government official will be entitled to qualified immunity as long as the conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In order to determine whether a constitutional right is clearly established, a qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen* (2004), 543 U.S. 194, 198. The constitutional right must be sufficiently *particularized* so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635 (1987).

As previously stated, Plaintiff does not have a right to access a specific governmental building let alone an office inside said building. *Williams*, supra. Here, Plaintiff was not removed from the building itself, and in fact began to leave the office voluntarily without knowing that security had been called to escort him into the hallway. (Ex. "A"-Plaintiff's Depo. at 91-92, 100; Ex. "C" Lutton Depo. at 31-32.)

Even assuming arguendo that clearly established case law does exist, establishing such an obligation, Defendant is still entitled to qualified immunity. If reasonable officials could disagree on the issue, immunity should be recognized. *Malley v. Briggs* (1986), 475 U.S. 335, 341. Thus, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Id.*

Defendant avers that an objectively reasonable public official could believe that he had the authority to have an individual who he was in litigation with removed from his office, when said individual had no further purpose for being there, and the individual had been informed that the official would only speak through his attorney, pursuant to instructions of a judicial body. At the very least, a reasonable official could believe that he had the authority to instruct the individual to leave, whether or not he had the authority to have security escort the individual from the office. Here, as previously stated, Plaintiff admitted that he wanted to leave the office, and was in fact leaving the office on his own when he noticed security.

Certainly, Defendant's alleged actions and conduct are protected by the doctrine of qualified immunity and therefore Plaintiff's constitutional claims should be dismissed.

**G.     Plaintiff Cannot Sustain a Defamation Claim Against Defendant.**

In his Complaint, Plaintiff brings state law claims as well as constitutional violation claims. Plaintiff's first state law claim is one for defamation.

The elements of a defamation claim are as follows:

(1)     the defendant made a false statement;
(2)     that was defamatory in nature;
(3)     and published the statement to a third-party;
(4)     the publication of the statement caused injury to the plaintiff; and
(5)     the defendant acted with the requisite degree of fault.

*Ratkosky v. CSX Transp., Inc.* 2009-Ohio-5690, 6 (Ohio App. 8 Dist.)

Here, Plaintiff alleges that Mr. Van Horne made the following statements to Plaintiff on the day of the incident that gave rise to this litigation:

You can talk to my lawyer. We had this settled two weeks ago in Federal Court in Akron, and you won. You took all the money off the people of Carroll County. Your lawyer signed all your rights away and now I have you over a barrel. You are supposed to be a poor sick farmer and you sit there with diamond rings on. ...

I would like to have a lie detector to show the people of Carroll County who is lying.

(Plaintiff's Complaint at ¶ 17.)

None of the aforementioned statements are sufficient for Plaintiff to sustain a defamation claim against Defendant. The entirety of the alleged defamatory statements, especially in the context of the litigation and settlement negotiations that were occurring at the time of the incident, can be construed as nothing but opinion, for which Defendant may not be held liable. (Citation Omitted.) *Kanjuka v. MetroHealth Med. Center* (2002), 151 Ohio App. 3d 183.

Indeed, Defendant stating that Plaintiff had won the litigation as a result of the settlement, and would like to have a lie detector to show people who is lying, along with the alleged assertion that he had Plaintiff "over a barrel" and that Plaintiff is supposed to be "a poor farmer," but wore diamond rings, are all either true statements. (Plaintiff admittedly was wearing a diamond ring and applied for lower property taxes pursuant to his attempt to have his property designated as agricultural land) or were simply opinion. (Ex. "A"-Plaintiff's Depo. at pp. 38-39, 161-162.)

The only statement on its face that could even arguably be construed as defamatory is Defendant's alleged statement that Plaintiff "took all the money off the people of Carroll County." However, in the context of a settlement that required a refund of public monies to the Plaintiff, the statement is simply hyperbole or opinion.

Furthermore even if the aforementioned statements could be construed as being defamatory, Plaintiff still cannot sustained his defamation claim. Indeed, one of the essential elements of a defamation claim is the publication of the alleged defamatory statements to third parties. *Ratkosky*, supra.

Here, the only third party to whom any of the aforementioned alleged statements were published, was Defendant's employee Carol Lutton who heard the Defendant state that Plaintiff had already taken enough money off of the taxpayers of Carol County. (Ex. "C" Lutton Depo. at pp. 20.) Therefore, at least relative to the other alleged statements, Plaintiff cannot sustain his defamation claim.

Finally, assuming arguendo that the aforementioned statements were defamatory *and* assuming arguendo that the statements were published to a third party, Plaintiff cannot sustain his defamation claim as Plaintiff has failed to even allege that he suffered any damages as a result of said alleged defamatory remarks, a necessary element of his claim. *Ratkosky*, supra.

Based upon the foregoing, Plaintiff's defamation claim should be dismissed, as said claim is simply unsustainable.

### H.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Unsustainable.

Along with Plaintiff's defamation claim, Plaintiff also brings an intentional infliction of emotional distress claim against Defendant in his individual capacity.

In order to sustain a claim for intentional infliction of emotional distress, Plaintiff must prove the following:

(1)    The Defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress;

(2)    The Defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized society;

(3)    The Defendant's actions proximately caused psychological injury to the Plaintiff; and

(4)    The Plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Lombardo v. Mahoning* 2009-Ohio-5826, (Ohio App. 8 Dist.), 1 (citing *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App. 3d 359, 366.

The threshold a plaintiff must reach to prove an intentional infliction of emotional distress claim is onerous. Indeed, "'only the most extreme wrongs, which do gross violence to the norms of the civilized society, will rise to the level of outrageous conduct.'" *Id.* at p. 2 (quoting *Brown v. Denny* (1991), 72 Ohio App. 3d 417, 423). To be sure, an intentional infliction of emotional distress claim cannot be based upon insults, "petty oppressions," and annoyances, in general. *Id.* Instead, a Defendant's conduct must be "atrocious" and "so extreme in degree" as to go beyond all bounds of decency. *Id.*

Here, at his deposition, Plaintiff failed to identify what serious emotional harm or mental anguish he suffered as a result of the incident that gave rise to this litigation. Indeed, Plaintiff had no physiological effects of the incident, admittedly, and suffered only from apprehension, that began even before his first case against the Defendant, well prior to the incident that gave rise to this litigation. (Ex. "A" Plaintiff's Depo. at pp. 135-136, 146-147, 163-165.)

Furthermore, Defendant requesting Plaintiff leave the premises given the instructions he had received from the Court, and the fact that no one at the auditor's office could answer Plaintiff's question at that point in time, simply could not be construed as conduct beyond the bounds of all decency, but rather simply an insult or annoyance, at best.

Finally, Defendant is entitled to immunity from Plaintiff's claim, pursuant to O.R.C. § 2744.03(A)(6). O.R.C. § 2744.03(A)(6) provides immunity to an employee of a political subdivision unless the employee's acts or omissions were as follows:

> [M]anifestly outside the scope of the employee's employment or official responsibilities; [Done] with malicious purpose, in bad faith, or in a wanton or

reckless manner [or]; Civil liability is expressly imposed upon the employee by a section of the Revised Code.

O.R.C. § 2744.03(A)(6).

Here, as Defendant's actions were reasonable under the circumstances he is certainly entitled to immunity under O.R.C. § 2744.03(A)(6).

Therefore, based upon the foregoing, Plaintiff's intentional infliction of emotional distress claim against Defendant in his individual capacity must fail as a matter of law.

I.      **Plaintiff's Gross Negligence Claim Against Defendant in his Official Capacity Must Fail as a Matter of Law Pursuant to Ohio's Sovereign Immunity Statute.**

As previously stated a claim against Defendant in his official capacity is tantamount to a claim against Carroll County.  See *State ex rel. Estate of Miles v. Village of Piketon* (2008), 121 Ohio St. 3d 231, 235.  However, Plaintiff's gross negligence claim against Defendant in his official capacity is barred by the Ohio Sovereign Immunity statute.

Ohio Revised Code § 2744.02(A)(1) provides immunity to political subdivisions in suits seeking damages for injury or loss to persons or property "caused by any act or omission of the political subdivision or employee of the political subdivision in connection with a governmental or proprietary function."  See *Franks v. Lopez* (1999), 69 Ohio St.3d 345, 347.

A plaintiff a may pierce the veil of immunity provided to political subdivisions by Ohio's Sovereign Immunity statute pursuant to only the five exceptions set forth in O.R.C. § 2744.02(B).  *Carter v. Cleveland* (1998), 83 Ohio St.3d 24, 28.  The exceptions set forth in O.R.C. § 2744.02(B) relate to injuries caused by the negligent operation of a motor vehicle, the negligent performance of acts of an employee with respect to a *proprietary* function; the negligent failure to keep public roads in repair and free from obstructions; the negligence of municipal employees for losses occurring within or on the grounds of public buildings; and when

liability is expressly imposed upon the political subdivision by a section of the Ohio Revised Code. O.R.C. § 2744.02(B)(1)–(5).

Here, none of the aforementioned exceptions to sovereign immunity apply to Plaintiff's gross negligence claim. Indeed, not only is "gross negligence" not one of the five exceptions set forth by O.R.C. § 2744.02(B), nor do Plaintiff's allegations concern any of the subject matter set forth in said exceptions. Therefore, Plaintiff's gross negligence claim must fail as a matter of law.

**J.** **Plaintiff's Gross Negligence Claim is Barred by the Ohio Sovereign Immunity Statue Against Defendant in his Individual Capacity.**

As previously stated, O.R.C. § 2744.03(A)(6) provides immunity to an employee of a political subdivision unless the employee's acts or omissions were as follows:

> [M]anifestly outside the scope of the employee's employment or official responsibilities; [Done] with malicious purpose, in bad faith, or in a wanton or reckless manner [or]; Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Furthermore, it is axiomatic that in order to sustain any negligence claim, a Plaintiff must prove *all* of the following elements:

(1) Defendant owed Plaintiff a duty of care;
(2) Defendant breached that duty; and
(3) The breach directly and proximately caused harm to the Plaintiff.

*Robinson v. Bates* (2006), 112 Ohio St. 3d 17, 24; See also *Torbet v. Young* 1915 WL 894 (Ohio App. 5 Dist.) (holding that gross negligence and negligence differ only in *degree*.)

A plaintiff must prove all of the foregoing elements, otherwise the defendant is entitled to judgment as a matter of law. *Deem v. Columbus Southern Power Co.*, 2007-Ohio-4404, 3 (Ohio App. 4th Dist.). Therefore, duty is an essential element of a negligence action. *Church v. Feleishour Homes, Inc.* (2007), 172 Ohio App. 3d 205, 220.

19

Here, Defendant is unaware of any legally recognized duty to allow Plaintiff to remain in the Carroll County Auditor's office given Plaintiff's conduct and the situation the Plaintiff and Defendant found themselves in, *i.e.* being opposing parties in litigation instructed to speak through their attorneys. Additionally, Plaintiff offers no evidence of any breach of such duty.

Furthermore, although "gross negligence" is akin to the "willful and wanton conduct" that is an exception to a public employee's sovereign immunity under O.R.C. § 2744.03(A)(6), in order for an individual to be guilty of such conduct, said individual must disregard a "duty" to act or conduct himself in a certain manner. *Harsh v. Lorain Cty. Speedway, Inc.* (1996), 111 Ohio App.3d 113.

Here, as previously stated, Defendant is unaware of any duty owed to Plaintiff relative to the allegations contained within his Complaint, let alone a breach of any duty. Accordingly, without a showing of gross negligence and/or willful and wanton conduct, Defendant is immune from Plaintiff's gross negligence claim pursuant to Ohio's Sovereign Immunity Statute.

## IV. CONCLUSION

Based upon the foregoing, Defendant respectfully requests that this Honorable Court grant his Motion for Summary Judgment, dismissing Plaintiff's claims against him.

Respectfully submitted,

MAZANEC, RASKIN, RYDER & KELLER CO., L.P.A.

*s/Roland J. De Monte*
JOHN T. MCLANDRICH (0021494)
ROLAND J. DE MONTE (0081129)
100 Franklin's Row; 34305 Solon Road
Cleveland, OH 44139
(440) 248-7906; (440) 248-8861 – Fax
Email:   jmclandrich@mrrklaw.com; rdemonte@mrrklaw.com

Counsel for Defendant E. Leroy Van Horne