## <u>TABLE OF CONTENTS</u>

I. STATEMENT OF FACTS ............................................................................. 1

II. LAW AND ARGUMENT ............................................................................. 4

 A. The Magistrate Properly Held That Plaintiff Cannot Succeed On His Procedural Due Process Claim As He Received All The Process That He Was Due....................... 4

 B. The Magistrate Applied The Appropriate Standard When Ruling On Plaintiff's Substantive Due Process Claim. ...................................................................... 6

 C. The Magistrate Properly Held That Plaintiff Cannot Succeed On His Equal Protection Claim As Plaintiff Has No Evidence To Show That He Was Treated Differently Than Similarly Situated Individuals............................................... 9

 D. The Magistrate Properly Held That Plaintiff Has No Evidence To Show That His Removal From The Auditor's Office Was Done Pursuant To A County Policy Or Custom........................................................................................ 11

 E. The Magistrate Properly Held That Plaintiff Failed To Plead Sufficient Facts To Overcome Defendant's Qualified Immunity. ........................................... 14

 F. The Magistrate Properly Held That Plaintiff Succeed On His Defamation Claim As He Failed To Show That He Was Accused Of A Crime Of Moral Turpitude And Has No Evidence Of Special Damages. ................................................ 15

 G. The Magistrate Properly Held That Plaintiff Failed To Produce Evidence To Show That Defendant Intended To And Did Cause Serious Emotional Distress As Is Necessary To Succeed On His Claim For Intentional Infliction Of Emotional Distress. ...................................................................................... 17

 H. The Magistrate Properly Held That Plaintiff Failed To Establish A Negligence Claim........................................................................................................ 18

 I. The Magistrate Properly Held That Plaintiff Failed To Satisfy His Summary Judgment Burden To Overcome Defendant's Immunity In His Individual Capacity. ................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ..................................................................... 8

*Heston v. Commissioner of Social Security*, 245 F.3d 528 (6th Cir. 2001) ............................. 7, 20

*Howard v. Grinage*, 82 F.3d 1343 (6th Cir. 1996) ....................................................................... 20

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989) ..................................................... 19

*JDC Management, LLC v. Reich*, 644 F.Supp.2d 905 (W.D.Mich. 2009) ................................... 10

*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002)...................................................... 7, 8

*Kellermann v. Holder*, 592 F.3d 700 (6th Cir. 2010) ................................................................... 17

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................................... 11

*Ker v. State of California*, 374 U.S. 23 (1963) ............................................................................... 8

*Macene v. M.J.W., Inc.*, 951 F.2d 700 (6th Cir. 1991) ................................................................... 6

*McIntosh v. Hudson*, 632 F.Supp.2d 725 (N.D.Ohio 2009) ...................................................... 7, 19

*Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978) ................................................................... 12

*Murr v. U.S.*, 200 F.3d 895 (6th Cir. 2000) ................................................................................ 7, 20

*Nehls v. Hillsdale College*, 65 Fed.Appx. 984 (6th Cir. 2003) ................................................... 16

*Nunn v. Lynch*, 113 Fed. Appx. 55 (6th Cir. 2004)........................................................................ 6

*Slough v. Telb*, 644 F.Supp.2d 978 (N.D.Ohio 2009) .................................................................. 20

*Spears v. Ruth*, 589 F.3d 249 (6th Cir. 2009) .............................................................................. 12

*Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed.Appx. 826 (6th Cir. 2009) ......................... 10

*Torres v. White*, 46 Fed.Appx. 738 (6th Cir. 2002) ................................................................. 17, 18

*TriHealth, Inc. v. Board of Commissioners of Hamilton County, Ohio*, 430 F.3d 783
   (6th Cir. 2005)............................................................................................................................ 10

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) .................................................................. 9

*Warren v. City of Athens, Ohio*, 411 F.3d 697 (6th Cir. 2005)....................................................... 9

**Statutes**

42 U.S.C. §1983 ............................................................................................................................ 20

O.R.C. §2744.02 ........................................................................................................................ 18, 19

4

## BRIEF IN SUPPORT

### I.    STATEMENT OF FACTS

In 2008, Plaintiff filed suit against Defendant in the Carroll County Court of Common Pleas, for claims arising out of the appraisal of Plaintiff's properties and the taxes assessed on those properties.  (See Exhibit "A" to the Motion for Summary Judgment at 13-14 and Exhibit "B" to the Motion for Summary Judgment at 138.) That case was removed to federal court and two attempts were made to resolve that litigation.

During the first attempt, the general agreement required, *inter alia*, that:  Plaintiff receive a refund check for the amount of taxes he overpaid based upon a reconfiguration (lowering) of his assessed property values.  (Ex. "A" at 80-82; Ex. "B" at 138, 141.)  The amount of the refund was not specifically prescribed.  Rather, the Court provided a range within which the refund should fall.  (Ex. "A" at 80-81; Ex. "B" at 138-139.)  As part of this agreement, Defendant understood that the parties were not to discuss the agreement outside the presence of their attorneys.  (Ex. "B" at 123.)

Pursuant to the agreement, the Auditor's Office recalculated Plaintiff's tax liability and provided Plaintiff with the refund check that fell within the specified range.  (Ex. "A" at 81-82.) The check also included the figures and calculations used by the Auditor's office, specifically employee Donna Detchon, in arriving at the refund figure.  (Ex. "B" at 142-143; see Exhibit "C" to the Motion for Summary Judgment at 14-16.)

Despite the fact the check was made out for an amount within the specified range and included the figures and calculations used, Plaintiff went to the Auditor's Office, which is located on the second floor of the Carroll County Courthouse, to get an explanation for the

refund calculations.  (Ex. "A" at 21-23, 84-85; Ex. "B" at 64.)  Defendant, the Carroll County Auditor, was in his private office when Plaintiff entered.  *(Id.* at 86-87; Ex. "B" at 121-122.)

Plaintiff was greeted by former Carroll County Auditor employee Carol Lutton.  (Ex. "C" at 13-14.)  Ms. Detchon, the employee responsible for calculating Plaintiff's refund, was not in the office that day.  Ms. Lutton informed Plaintiff Ms. Detchon was unavailable, but that Defendant may be able to help him.  (*Id.* at 14-15.)  Ms. Lutton then went to Defendant's office and informed him that Plaintiff was there to see him regarding the refund figures.  (*Id.* at 14-16; Ex. "B" at 121-122.)

Defendant approached the counter opposite from Plaintiff and stood approximately 3-4 feet away from him.  (Ex. "A" at 91; Ex. "B" at 128.)  Defendant then told Plaintiff that if he wanted to speak to anyone he should speak to Defendant's attorney, given what Defendant understood to be the Court's instructions to that effect.  (Ex. "B" at 121-122.)  Defendant then left the counter, returned with his attorney's contact information and provided this information to Plaintiff.  (Ex. "A" at 91-92, 96-97; Ex. "B" at 123.)

Plaintiff then began calling Defendant a liar and a thief.   (Ex. "B" at 124-125.)  Defendant, defending himself, stated that if anyone was stealing money from the taxpayers it was Plaintiff as the taxpayers paid for Plaintiff's refund.  (*Id.*)  He then asked Plaintiff to leave.  (*Id.* at 125-126; Ex. "C" at 25-26.)  Plaintiff refused, and Defendant asked Plaintiff twice more to leave.  (Ex. "B" at 125-127.)  When Plaintiff continued to refuse to leave and insisted that they talk about the refund now, Defendant informed him that he could push a button and have him escorted out of the office.  (Ex. "C" at 31-32.)  Defendant then pushed the button located under the counter to alert security.  (Ex. "B" at 125-127.)

For his part, Plaintiff testified that he wanted to leave after his encounter with Defendant, was "glad to go," and did not even know that security had been called to escort him from the Office.  (Ex. "A" at 91-92, 100.)  In fact, Plaintiff had begun leaving just as the two officers arrived at the door of the Office.  (Ex. "C" at 31-32.)

Although they did not see the encounter between Plaintiff and Defendant as an emergency, the officers wanted to separate the two parties before the encounter escalated any further.  (See Exhibit "D" to the Motion for Summary Judgment at 13, 16; See Exhibit "E" to the Motion for Summary Judgment at 28-29.)  When Defendant told the officers he wanted Plaintiff out of the Office, Plaintiff "didn't wait" and left the office.  (Ex. "A" at 100.)  He admitted that the officers did not instruct him to leave or to come with them.  (*Id.*)  Plaintiff further admitted that the officers did not touch, grab, or physically direct him to come with them.  (*Id.*)   In fact, Plaintiff described the officers as very polite.  (*Id.* at 92.)

After leaving the Auditor's Office, the officers walked behind Plaintiff for a short distance and had already left by the time Plaintiff reached the stairs leading to the first floor of the Courthouse.  (*Id.* at 101-104; Ex. "D" at 17.)  Plaintiff simply walked down the steps and out the door.  (Ex. "A" at 100-104.)[1]

In his Objections, Plaintiff alleges that Defendant "admits" that he did not handle the situation properly and alleges that the Carroll County Prosecutor told Defendant that he should not have "done it."  However, Plaintiff fails to mention that the Carroll County Prosecutor told Defendant that he was within his rights to have Plaintiff escorted from the office, and agreed

---

[1] While Plaintiff claims in his Objections that he was "escorted" out of the Courthouse by the security officers, this assertion directly contradicts his own testimony that the officers merely walked behind him and left by the time Plaintiff reached the stairs.  (Ex. "A" at 101-104; Ex. "D" at 17.)

with Defendant that Plaintiff and Defendant should not have been speaking to each other given Defendant's understanding of the Court's instructions.  (Ex. "B" at 128-129, 194.)

Plaintiff also alleges that Defendant was "forceful in his actions and was radical and aggressive."  However, at Plaintiff's deposition, Plaintiff testified that Defendant's "radical and aggressive" actions consisted of Defendant pointing his finger and Defendant's "body language." (Ex. "A" at 105-106.)

Plaintiff argues that he felt that Defendant might shoot him. At his deposition, however, Plaintiff did not testify to any knowledge that Defendant had any firearms or weapons in his office, or that such knowledge was a cause of his fear, nor did he believe that Defendant *would* shoot him.  (See *id.* at 107.)  The only "weapons" Defendant has in his office are decorative reproductions of civil war era swords and a "Custer era" replica pistol that cannot fire ammunition.  (Ex. "B" at 58-62, 66.)

In addition, Plaintiff's insinuation that his various health problems are injuries he has suffered as a result of the incident that gave rise to this litigation is misleading at best.  Plaintiff testified that his heart problems, headaches, and issues with blood pressure began in 2004, well before the incident that gave rise to this litigation.  (Ex. "A" at 135-136, 146-147, 163-165.) Furthermore, Plaintiff failed to identify when his alleged trouble with sleeping began.  (*Id.* at 148-150.)

## II.    LAW AND ARGUMENT

A.  The Magistrate Properly Held That Plaintiff Cannot Succeed On His Procedural Due Process Claim As He Received All The Process That He Was Due.

Counts One and Two of Plaintiff's Complaint allege that Defendant violated Plaintiff's Due Process Rights.   The Magistrate found that Plaintiff had a liberty interest in his "right to be heard" as well as to be in the Auditor's Office, which is a public building.  (Doc. 80 at 8-10.)

The Magistrate went on to hold that despite these protected liberty interests, Plaintiff received all the pre-deprivation process that he was due by virtue of the parties' settlement agreement in the prior lawsuit.  (*Id.* at 10-13.)  Plaintiff now objects to the Magistrate's ruling, alleging that the settlement agreement is irrelevant to Plaintiff's alleged removal from the Auditor's Office.[2]

Despite arguing that the settlement agreement is irrelevant to the Court's analysis of Plaintiff's Procedural Due Process Claim, Plaintiff fails to explain why or how it is irrelevant or refute the Magistrate's analysis.  Instead, the majority of Plaintiff's objection to this issue focuses on *when* an individual has a right to a hearing, not what hearing will be considered sufficient.

Plaintiff attempts to unduly compartmentalize his Procedural Due Process arguments.  Plaintiff focuses solely on his alleged right to a hearing before he was removed from the Auditor's Office.  Plaintiff ignores, however, the purpose of his visit to the Auditor's Office.  Plaintiff was there to discuss the recalculation of his tax liability and alleged that his removal from the Auditor's Office interfered with his ability to fully present his case.  (Doc. 67-1 at 7, 13.)  The issues surrounding his refund had been fully addressed, with Plaintiff's participation, in the settlement agreement that was executed in Plaintiff's previous suit.  This process permitted Plaintiff to address his concerns and thoughts about the issues surrounding the recalculation of his tax liability and, as such, his removal from the Auditor's Office failed to harm Plaintiff in any manner.

Even if the Court determines that the Magistrate improperly relied upon the settlement agreement to bar Plaintiff's Procedural Due Process claim, Defendant was still entitled to

---

[2] Plaintiff's Procedural Due Process Claims encompassed both an alleged denial of his right to be heard about the recalculation of his tax liability and the removal from the Auditor's Office.  In his Objections, Plaintiff focuses on the removal itself and does not address the right to be heard.  Presumably, Plaintiff does not object to the Magistrate's decision that Plaintiff received all the process he was due with respect to the right to be heard about his tax liability.

summary judgment as Plaintiff must prove that he was either deprived of a property or liberty interest as a result of an "established state procedure," or must plead **and** prove that plaintiff's alleged deprivation cannot be adequately addressed by state remedies. *Macene v. M.J.W., Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Plaintiff neither cited an established state procedure that allegedly caused his deprivation of Due Process, nor did he allege that available state remedies were inadequate to address such an alleged deprivation.

Furthermore, Plaintiff relinquished any interest in remaining in the Auditor's Office when he *admittedly left the office voluntarily*. (Ex. "A" at 91-92, 100; Ex. "C" at 31-32; See *Nunn v. Lynch*, 113 Fed. Appx. 55, 59 (6th Cir. 2004). Here, Plaintiff "wanted out of [the office]", and in fact, the courthouse in general, and turned to leave *prior to* knowing that security was present. (Ex. "A" at 91-92, 100.) Plaintiff cannot establish that he was actually deprived of any right as a result of Defendant's action. Thus, even if the Court determines that the settlement agreement was not sufficient process for Plaintiff's removal from the Auditor's Office, the grant of summary judgment was not in error.

B. <u>The Magistrate Applied The Appropriate Standard When Ruling On Plaintiff's Substantive Due Process Claim.</u>

Plaintiff also alleged a Substantive Due Process claim arising out of his removal from the Auditor's Office. The Magistrate held that Plaintiff's Substantive Due Process claim was properly analyzed under a deliberate indifference standard as Defendant had time to deliberate his course of action before he acted. (Doc. 80 at 13-15.) The Magistrate further held that Defendant was not deliberately indifferent as there was no evidence that he consciously disregarded a known risk of serious injury to Plaintiff. (Doc. 80 at 15.) Plaintiff objected to the Magistrate's conclusion, asserting that the claim should be analyzed under a strict scrutiny analysis as his right to be in a public place was a fundamental right.

6

Plaintiff has not preserved this Objection as this argument was not raised to the Magistrate in the Brief in Opposition to the Motion for Summary Judgment.  Rather, in the Brief in Opposition, Plaintiff argued a "shocks the conscious" and "deliberate indifference" standard.  (Doc. 67-1 at 14-15).  Plaintiff did not argue or allege that Defendant had impacted a fundamental right or that strict scrutiny should apply to Defendant's actions.  To the contrary, Plaintiff employed and argued a rationally related test.  (*Id.* at 15.)

The purpose of an objection is not to present new claims, but to argue against the findings, conclusions, and recommendations of the Report & Recommendation based on the law and the record.  *McIntosh v. Hudson*, 632 F.Supp.2d 725, 729 (N.D.Ohio 2009).  As Plaintiff did not argue before the Magistrate that a fundamental right was violated or that strict scrutiny was required, he has waived that argument now.  *Murr v. U.S.*, 200 F.3d 895, 902 fn. 1 (6th Cir. 2000); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001).

Even assuming that this issue is properly before the Court for consideration, Plaintiff has failed to establish any error in the Magistrate's decision.  Plaintiff now argues that a strict scrutiny review should be applied to Defendant's actions.  In support of this argument, Plaintiff cites to *Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002).  In *Johnson*, the 6th Circuit Court of Appeals recognized for the first time a fundamental right to travel locally through public spaces and roadways.  *Id.* at 495.  The Court in *Johnson* then applied a strict scrutiny review to determine whether Cincinnati's ordinance which prohibited convicted drug offenders from travelling through high drug areas violated the individual's right to intrastate travel.  The Court found that a strict scrutiny review was appropriate in that situation, but left open the possibility for a lesser form of review for less restrictive prohibitions.  *Id.* at 502.  The alleged restriction here – exclusion from the Auditor's Office – is certainly less restrictive than the

7

ordinance at issue in *Johnson* which excluded an individual from "the largest national historic district in the nation, the City's fastest growing entertainment district and home to nearly 10,000 City residents."  *Id.*  Given the lesser restriction, this situation is that which would qualify for a lesser standard of review under *Johnson* – such as the level of review applied by the Court.

Moreover, *Johnson* addressed the judicial review of an ordinance.  Separate rules apply when reviewing the action of a governmental official – the acts challenged in this case.  The U.S. Supreme Court has held that the Substantive Due Process Clause protects against the abuse of power by governmental officials.  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  An individual's Substantive Due Process rights are violated by executive action only when it is characterized as arbitrary, or conscience shocking, in a constitutional sense.  *Id.* at 847.  The Court did not differentiate between fundamental and non-fundamental rights, as it does when reviewing legislative acts (in fact, the right at issue in *Lewis* was the plaintiff's decedent's right to be free from unlawful seizures – itself a fundamental right).  *See id.*; *Ker v. State of California*, 374 U.S. 23 (1963) (recognizing the right to be free from unreasonable searches and seizures as fundamental).

The Court has limited the "shocks the conscience" standard to emergency situations where a public official does not have the time to deliberate before acting.  *Lewis* at 851.  When deliberation is possible, a public official only violates a plaintiff's Substantive Due Process rights where the public official is deliberately indifferent.  *Id.*  The Magistrate properly found that Plaintiff failed to present evidence that would show Defendant was deliberately indifferent, and Plaintiff does not challenge that finding in his Objections.

As Plaintiff waived this argument, Plaintiff's Objections should be overruled.

C. The Magistrate Properly Held That Plaintiff Cannot Succeed On His Equal Protection Claim As Plaintiff Has No Evidence To Show That He Was Treated Differently Than Similarly Situated Individuals.

Count Two of Plaintiff's Complaint alleges that his Equal Protection rights were violated. Plaintiff does not maintain that he was treated differently based upon his membership in a protected class. Rather, Plaintiff attempts to allege a "class of one" theory. The Magistrate held that Plaintiff could not succeed on this claim as he was unable to show that he was treated differently to other similarly situated individuals as Plaintiff failed to identify any other individuals who had previously filed lawsuits against the Auditor. Plaintiff now objects to the Magistrate's decision arguing that the past lawsuit is not relevant to determining similarly situated individuals, but rather establishes the personal animus necessary to show his Equal Protection rights were violated.

There is a two part test that the plaintiff must satisfy in order to succeed on a "class of one" claim. The plaintiff must demonstrate that: (1) the defendant intentionally treated the plaintiff differently from other similarly situated individuals; and (2) there was no rational basis for the difference in said treatment. (Citations Omitted.) *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The lack of a rational basis for the difference in treatment can be established by either negating all possible rational basis for the defendant's actions or by showing that the defendant's actions were motivated by animus or ill-will. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005). The "rational basis" test means that courts will not overturn government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational. *Id.* at 710. The 6th Circuit Court of Appeals has cautioned that this standard is highly deferential and that government action will be

held unconstitutional only in rare or exceptional circumstances.  *JDC Management, LLC v. Reich*, 644 F.Supp.2d 905, 925 (W.D.Mich. 2009).

Plaintiff's objections focus on the second prong of the Equal Protection analysis – whether there was a rational basis for Defendant's actions.  The Magistrate, however, did not address this issue in the Report.  Rather, the Magistrate held that Plaintiff failed to satisfy the *first* prong – Plaintiff failed to show that he was treated differently to similarly situated individuals.  To satisfy this threshold requirement, the plaintiff must show that he was treated differently from at least one individual who was similarly situated in all material respects.  *JDC Management, supra* at 926, *citing Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed.Appx. 826, 836 (6th Cir. 2009).  Courts should enforce the similarly-situated requirement with particular strictness when the plaintiff invokes a class of one theory rather than the more settled cognizable group theory. *Id.*

Disparate treatment of persons who are dissimilar only in immaterial respects is not rational; however disparate treatment of persons is reasonably justified if they are dissimilar in some material respects.  *TriHealth, Inc. v. Board of Commissioners of Hamilton County, Ohio*, 430 F.3d 783, 790 (6th Cir. 2005)[3].  The Magistrate held that the past litigation history between the parties cause Plaintiff to be differentiated in a material respect from other citizens who came into the Auditor's Office to complain about their tax bill.  While a litigation history in general may not dissimilate Plaintiff from other citizens wishing to discuss their tax liability, the particular litigation in this case is a material respect.  As indicated above, the parties entered into a settlement agreement for the previous litigation.  Defendant understood that as part of that agreement, the parties were not to discuss the terms of the settlement, which included the

---

[3] In *TriHealth, Inc.*, the 6th Circuit Courto f Appeals distinguished Plaintiff's case of *Bower v. Village of Mount Sterling,* holding that *Bower* lacked precedential effect and was not binding as it was an unpublished opinion. *TriHealth, Inc. v. Board of Commissioners of Hamilton County, Ohio*, 430 F.3d at 789.

recalculation of Plaintiff's tax liability, outside the presence of the parties' attorneys. (Exhibit "B" at 122-124.) The directive not to discuss this matter outside the presence of the attorneys is a material factor which differentiates Plaintiff from other citizens wishing to discuss their tax liability. Plaintiff has not provided any arguments or law in his Objections to show that the past litigation history cannot be a basis for determining whether Plaintiff is a similarly situated individual.

Even if the Court determines that Plaintiff was similarly situated to other citizens, the Magistrate properly granted summary judgment to Defendant as there was a rational basis for Defendant's action. Defendant was acting upon what he understood to be the Court's instructions that he not directly discuss the case and its subject matter with Plaintiff until the case had concluded. (Exhibit "B" at 122-124.) Defendant informed Plaintiff of this, and provided Plaintiff with Defendant's attorney's contact information. (*Id.* at 123.) Contrary to Plaintiff's argument, Defendant did not treat Plaintiff different out of animosity, but rather was following what he believed was his duty in this situation – not to discuss the terms of the settlement agreement without the attorneys present. As Defendant believed he was complying with the Court's instructions, there was a rational basis for his decision not to discuss the recalculation of Plaintiff's tax bill with him.

D.  The Magistrate Properly Held That Plaintiff Has No Evidence To Show That His Removal From The Auditor's Office Was Done Pursuant To A County Policy Or Custom.

Count Two of Plaintiff's Complaint attempts to assert claims for a violation of Plaintiff's Due Process and Equal Protection rights against Defendant in his official capacity. There is no dispute that an official capacity claim against a state official is treated the same as a claim against the County itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff must then

show that his constitutional rights were violated as a result of a county policy, procedure or custom. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978).  The Magistrate held that Plaintiff failed to show that Defendant acted pursuant to an official policy when he removed Plaintiff from the Auditor's office.  Plaintiff objects to this conclusion, arguing that the general understanding that Plaintiff would not be permitted to enter the Office in the future was sufficient to show an official policy.

An "official policy" often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.  *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).  There is no evidence that there was a general policy excluding citizens who wished to question their tax liability.  In fact, in his Brief in Opposition, Plaintiff admitted that other citizen who wished to question their tax liability were permitted to remain in the Auditor's Office (this, in fact, forms the basis of Plaintiff's Equal Protection claim).  (Doc. 67-1 at 18.) Further, there is no evidence to indicate that there was a "fixed plan of action" to be followed if Plaintiff returned to the Auditor's Office in the future.

In his Objections, Plaintiff merely alleges that Defendant instituted a policy "banning" Plaintiff from the Auditor's office.  The only "evidence" Plaintiff cites in support of the alleged "ban" is Defendant's comment to former Carroll County Auditor employee Carol Lutton that Plaintiff was "not to be in the office" pursuant to the settlement agreement and directions from the court.  While Plaintiff quotes from Ms. Lutton's deposition testimony to support his Objections, he excludes her testimony as to the reason Plaintiff was being excluded from the Auditor's Office:

> Q.   Did Van Horne say anything else?
>
> A.   I think one of us must have asked him why Mr. Ferguson was
>
>       not to be in the office and he said that was one of the rules of
>
>       the settlement or something.
>
> Lutton Deposition at 47, lines 13-17.

Ms. Lutton went on to testify:

> Q.   So as I understand it, based on what Mr. Van Horne said, that
>
>       that was one of the rules of the settlement, were you led to
>
>       believe that part of the settlement was that Mr. Ferguson was
>
>       not to come to that office?
>
> A.    To discuss, yes, to discuss the values that had been involved
>
>       in the settlement.
>
> Lutton Deposition at 48, lines 7-13.

Contrary to Plaintiff's assertion that Defendant enacted a policy banning Plaintiff from the Auditor's Office, Defendant merely relayed his understanding of the federal court's instructions surrounding the prior settlement.  Ms. Lutton testified that they were not given any instructions as to what to do if Plaintiff returned to the Auditor's Office.  *Id.* at 47.  Ms. Lutton's testimony was not that Plaintiff was barred generally from entering the Auditor's Office, but rather was not permitted to discuss the values involved in the settlement.  *Id.* at 48.  There is no evidence that Plaintiff was barred from entering the Auditor's Office to pursue business unrelated to the settlement.

Taking this evidence together, there is no indication that the general understanding around the Auditor's Office was that Plaintiff was barred from entering the Auditor's Office.  As

Plaintiff relies solely on the general understanding that Plaintiff was barred to support his Objections to the Magistrate's ruling on his *Monell* claims, Plaintiff's objection must be overruled.

E.  <u>The Magistrate Properly Held That Plaintiff Failed To Plead Sufficient Facts To Overcome Defendant's Qualified Immunity.</u>

While Plaintiff argues in his Objections that the Court imposed a heightened pleading standard on him, a review of the Magistrate's Report shows that the Magistrate granted qualified immunity as Plaintiff failed to produce the evidence necessary to show that Defendant was not entitled to qualified immunity.

In Plaintiff's Brief in Opposition, he argued that Defendant was not entitled to summary judgment as his conduct violated Plaintiff's clearly established constitutional right.  (Doc. 67-1 at 21.)  Plaintiff summarily alleged that Defendant violated this right by banning him from the Auditor's Office without Due Process.  Plaintiff, however, failed to point to any facts to support his allegation that he was banned from the Auditor's Office, other than one employee's testimony that Defendant stated Plaintiff was not to be in the office.  This testimony, however, failed to establish that Plaintiff was not to be permitted to return or explain to the employees what action they were to take if Plaintiff returned.

Moreover, Plaintiff's accusation that he was "banned" from the Auditor's Office contradicted Plaintiff's Complaint which alleged only that Plaintiff was "discouraged" from returning.  (Doc. 80 at 22.)  Plaintiff's own testimony does not support a "banning" from the Auditor's Office.  Plaintiff explained his removal as follows:

> Sometime he [Defendant] had rung a buzzer to -- and I was standing there, and I didn't even notice the police officers were behind me.  But I do remember what he said.  He says, I want him out of here now. They took me outside and very -- they was very, very polite.
> Plaintiff's Depo at 92, lines 7-13.

As Plaintiff failed to produce evidence to support his claim that he was "banned", the Magistrate properly granted qualified immunity to Defendant.

Plaintiff also alleged that a jury trial was necessary to resolve "disputed facts", but failed to identify a single disputed fact aside from the scope and duration of the ban.  (*Id.* at 22.)  As Plaintiff's alleged constitutional violation was based on his removal from the Auditor's Office without Due Process, the scope and duration of the ban is immaterial to the resolution of the qualified immunity issue or even Plaintiff's alleged constitutional violation.  As such, a dispute over this "fact" is insufficient to show a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.")

Despite Plaintiff's contention that the Magistrate imposed a heightened pleading standard on him, the Magistrate's Report references only Plaintiff's Brief in Opposition and its deficiencies.  (Doc. 80 at 21).  The Report is clear that the grant of qualified immunity to Defendant was based on Plaintiff's failure to satisfy his summary judgment burden and not on any facts not pleaded in the Complaint.

F.  The Magistrate Properly Held That Plaintiff Succeed On His Defamation Claim As He Failed To Show That He Was Accused Of A Crime Of Moral Turpitude And Has No Evidence Of Special Damages.

Count Three of Plaintiff's Complaint asserted a defamation claim against Defendant for Defendant's statement that Plaintiff was a liar and that he was taking money out of taxpayer's pockets.  The Magistrate held that Defendant's statement that Plaintiff was a liar is a non-actionable opinion.  (Doc. 80 at 23-25.)  In his Objections, Plaintiff asserts that accusing Plaintiff of being a liar involves issues of moral turpitude.  Plaintiff, however, does not object or present any arguments against the Magistrate's holding that this statement was a non-actionable

statement of opinion.  As Plaintiff has not addressed this issue, his Objection to the Magistrate's Report should be overruled as it relates to his claim that being called a liar was defamatory.

The Magistrate also held that the statement that Plaintiff was taking money out of taxpayer's pockets was not defamatory *per se* as it did not accuse Plaintiff of acts of moral turpitude.  (Doc. 80 at 26.)  As the statement was not defamatory *per se* and Plaintiff failed to show any special damages, the Magistrate granted summary judgment on the defamation claim. Plaintiff objects to the Magistrate's conclusion that this statement does not involve moral turpitude.

Plaintiff does not object to the conclusion that he did not offer of evidence of special damages, so in order to succeed on his claim, he must show that the statement is defamatory *per se*.  The Magistrate found that Plaintiff failed to meet his summary judgment burden by providing only a conclusory statement that the allegation that Plaintiff was taking money out of taxpayer's pockets invoked an issue of moral turpitude.  In his Objections, Plaintiff provides only one new allegation – that this statement was the result of Defendant's bias or desire to retaliate against Plaintiff.  (Doc. 81 at 22.)

This new argument, however, fails to address the Magistrate's issue.  The Magistrate was not concerned with what the motive behind the statement may or may not have been.  Plaintiff failed to address *how* this statement involved an accusation of moral turpitude.  (Doc. 80 at 26.) The mere argument that "taking money out of taxpayer's pockets" could be construed as a crime of theft is insufficient to show that the statement involves moral turpitude.  *Nehls v. Hillsdale College*, 65 Fed.Appx. 984, 990-91 (6th Cir. 2003).  Rather, to show moral turpitude, Plaintiff must show that the conduct referenced is inherently base, vile, or depraved and contrary to the accepted rules of morality and the duties owed between persons or to society in general.

*Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010).  An offense involves moral turpitude if it is accompanied by a vicious motive or corrupt mind.  *Id.* at 702.  Plaintiff does not explain how the alleged statement that he was taking money out of taxpayer's pockets falls under any of these standards such that it would be understood as involving a crime of moral turpitude.  As Plaintiff did not meet his summary judgment burden before the Magistrate and does not show how the Report incorrectly determines that Plaintiff failed in this burden, his objection should be overruled.

G.  <u>The Magistrate Properly Held That Plaintiff Failed To Produce Evidence To Show That Defendant Intended To And Did Cause Serious Emotional Distress As Is Necessary To Succeed On His Claim For Intentional Infliction Of Emotional Distress.</u>

Count Four of Plaintiff's Complaint alleged a claim for intentional infliction of emotional distress.  The Magistrate held that Plaintiff's claim failed as he did not produce evidence to show that Defendant intended to cause Plaintiff serious emotional distress or that Plaintiff did in fact suffer from serious emotional distress.  (Doc. 80 at 28.)  Plaintiff objects that Defendant should have known that his conduct in summoning officers to remove Plaintiff would cause emotional distress and that Plaintiff has experienced trouble sleeping and trouble with his blood pressure since the incident.  (Doc. 81 at 23.)

As with several other arguments, Plaintiff only offers the conclusory statement that Defendant should have known that having Plaintiff removed from the premises would cause serious emotional distress.  While Plaintiff could argue that removing Plaintiff from the premises was an indignity or insulting, this level of conduct does not rise to the level of emotional distress.  *Torres v. White*, 46 Fed.Appx. 738, 755 (6th Cir. 2002).  Plaintiff has not cited to or produced any evidence to show that Defendant knew or even should have known that having Plaintiff removed from the Auditor's Office would result in severe and debilitating emotional distress to Plaintiff.

17

Closely related, Plaintiff has not shown that he did in fact suffer severe and debilitating emotional distress.  Plaintiff claims that he has had difficulty sleeping and experienced trouble with his blood pressure.  (Doc. 81 at 23.)  Plaintiff admitted that he did not call his doctor the day he was removed from the Auditor's Office.  (Ex. "A" at 146.)  However, Plaintiff admits that he go dancing two or three times a week for three hours at a time and that he jogs on his Wii board.  (*Id.* at 147-149.)  There are issues with causality as Plaintiff admits that his health problems began well before the incident that gave rise to this litigation.  (*Id.* at 135-136, 146-147, 163-165.)  Even assuming Plaintiff can show a connection between his symptoms and the removal from the Auditor's Office, the Magistrate correctly held that Plaintiff failed to show his symptoms were severe and debilitating.

Plaintiff has presented no evidence of the impact of the alleged emotional distress on his daily life.  He has also not presented any evidence that "a reasonable person, normally constituted, would be unable to cope adequately" with the stress of the situation.  *Torres, supra* at 756.  (Doc. 80 at 28.)  As Plaintiff has not offered any arguments or pointed to any citations in the record where he exhibited severe and debilitating emotional distress, Plaintiff cannot show that the Magistrate's decision was incorrect.  Plaintiff's Objection should accordingly be overruled.

H.  The Magistrate Properly Held That Plaintiff Failed To Establish A Negligence Claim.

Count Five of Plaintiff's Complaint alleged that Defendant's actions, in his official capacity, were grossly negligent.  Defendant asserted that he was immune from Plaintiff's negligence claim under Ohio Revised Code Chapter 2744.  The Magistrate held that Defendant was immune from liability under O.R.C. §2744.02(A), but that Plaintiff's claim fell under the exception to immunity for the negligent performance of proprietary functions in O.R.C.

18

§2744.02(B)(2). The Magistrate ultimately held that Plaintiff failed to establish that Defendant acted negligently and, as such, could not impose liability on Defendant. Plaintiff objects to the Magistrate's ruling that he failed to establish that Defendant acted grossly negligent.

Plaintiff contends that he satisfied all of the essential elements of his claim. Plaintiff claims that Defendant owed him a duty not to violate Plaintiff's constitutional rights, that Defendant breached that duty by removing Plaintiff from the Auditor's Office without Due Process and that the removal proximately caused Plaintiff's emotional distress. As argued above, Plaintiff failed to show that his Procedural Due Process rights were violated. As Plaintiff's negligence claim rests on a violation of his Procedural Due Process rights, that claim must necessarily fail if his Due Process rights were not violated.

As with several of his previous claims, Plaintiff failed to meet his summary judgment burden to show that he was entitled to the immunity exception contained in O.R.C. §2744.02(B)(2). The entirety of Plaintiff's argument in his Brief in Opposition was that Defendant was engaged in a proprietary function when he ordered Plaintiff removed from the Auditor's Office. Plaintiff made no argument that Defendant was negligent in so doing nor did Plaintiff cite to any portions of the record that would prove that there was a genuine issue of material fact as to whether Defendant was negligent. The Court is not required to review the entire record to construct Plaintiff's case. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (holding that "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). Further, Plaintiff's attempt to now establish negligence is a new argument which cannot be raised in his Objections. *McIntosh v. Hudson*, 632 F.Supp.2d 725, 729 (N.D.Ohio 2009); *Murr v. U.S.*, 200

F.3d 895, 902 fn. 1 (6th Cir. 2000); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001).

Even if the Court addresses the merits of Plaintiff's negligence claim, Plaintiff cannot base a negligence claim on the alleged breach of a Constitutional right. Plaintiff's exclusive remedy for constitutional violations is found in 42 U.S.C. §1983, unless another remedy is provided for by statute. *Slough v. Telb*, 644 F.Supp.2d 978, 998 (N.D.Ohio 2009). Plaintiff's attempt to allege a negligence claim based upon a duty established by the Constitution is merely an attempt to circumvent the requirements of 42 U.S.C. §1983 and impose a lesser burden for establishing a violation. *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996) (recognizing that mere negligence is not sufficient for a Procedural Due Process violation). Plaintiff's sole contention that Defendant owed a duty to him is based on an alleged duty to follow the requirements of Procedural Due Process. Plaintiff cites no law which would permit Plaintiff to maintain a negligence claim based on an alleged violation of a duty owed under the U.S. Constitution. As such, Plaintiff is unable to maintain his negligence claim, even assuming Plaintiff has preserved the argument for his Objections.

I.   The Magistrate Properly Held That Plaintiff Failed To Satisfy His Summary Judgment Burden To Overcome Defendant's Immunity In His Individual Capacity.

Plaintiff's negligence claim was asserted against Defendant in both his official and individual capacities. The Magistrate held that Plaintiff failed to meet his summary judgment burden by failing to cite any legal authority to support his claim that Defendant acted outside the scope of his authority and by failing to cite to any portion of the record to support his allegation that Defendant acted recklessly or wantonly. (Doc. 80 at 32-33.) Plaintiff objects to the Magistrate's decision stating that violating Plaintiff's constitutional rights was outside the scope

of Defendant's employment and that Defendant's alleged bias against Plaintiff shows malicious purpose, bad faith, wanton or reckless conduct.  (Doc. 81 at 24).

As argued above, to the extent Plaintiff has failed to show that his constitutional rights were violated, his negligence claims must necessarily fail.  Second, Plaintiff still fails to cite to any legal authority to support his allegation that Defendant acted outside the scope of his duties or point to any evidence in the record to support his allegation that Defendant was biased against him based upon the previous lawsuit.  Plaintiff has not presented any evidence to rebut Defendant's statement that Plaintiff was removed from the Auditor's Office as a result of Defendant's understanding that the parties were not to discuss the settlement agreement without the attorneys being present.

Respectfully submitted,

MAZANEC, RASKIN, RYDER & KELLER CO., L.P.A.

_s/Tami Z. Hannon_____
JOHN T. MCLANDRICH (0021494)
TAMI Z. HANNON (0079812)
*Counsel for Defendant E. Leroy Van Horne*

21