# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) | CASE NO.5:09cv2055 |
| DARL FERGUSON, | ) |  |
|  | ) |  |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | MEMORANDUM OPINION |
|  | ) |  |
|  | ) |  |
| E. LEROY VAN HORNE, | ) |  |
|  | ) |  |
|  | ) |  |
| DEFENDANT. | ) |  |

On November 3, 2010, then Magistrate Judge Benita Pearson filed a Report and Recommendation (Doc. No. 80) resolving Defendant's motion for summary judgment.[1] Plaintiff has filed timely objections to the Report (Doc. No. 81), and Defendant has filed a response. (Doc. No. 83.)

Upon *de novo* review of those portions of the Report to which Plaintiff has made objection, this Court hereby ADOPTS, in part, and REJECTS, in part, the Report and Recommendation of the Magistrate Judge. As set forth more fully below, Defendant's motion for summary judgment (Doc. No. 65) is GRANTED, in part, and this case is DISMISSED.

This Court's review of the Magistrate Judge's Report and Recommendation is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision

---

[1] On December 29, 2010, Benita Y. Pearson was sworn in as a United States District Court Judge for the Northern District of Ohio. For the sake of convenience, the Court will continue to refer to District Court Judge Pearson as "the Magistrate Judge" inasmuch as she served in this capacity at all times relevant to the present litigation.

as to those portions of the document to which objection is made. Because Plaintiff objected only to those portions of the Report that recommended the dismissal of the claims raised in the Complaint, the remainder of the Report—including its account of the factual and procedural history of the case—is hereby accepted as written. Thus, the Court will only provide a brief review of the facts and procedural posture sufficient to adequately frame the issues presented by Plaintiff's objections.

**Background**

This lawsuit marks the second time the parties have been before this Court. On March 4, 2008, Plaintiff Darl Ferguson (Plaintiff or Ferguson) filed an action in the Carroll County Court of Common Pleas against Defendant E. Leroy Van Horne (Defendant or Van Horne), the Carroll County Auditor. On April 2, 2008, the action was removed to this Court. (*Ferguson vs. Van Horne*, Case No. 5:08CV848.) In that prior action, Plaintiff alleged that Defendant, in his official capacity, wrongfully increased the value of Plaintiff's rental property by 100% and the value of the land, itself, by 450%. (Case No. 5:08CV848, Doc. No. 1-1, Complaint at ¶ 12.) The end result was that Plaintiff was required to pay substantially higher property taxes than he had in years past. Framing his single cause of action as falling within the confines of 42 U.S.C. § 1983 and state law, Plaintiff claimed that Defendant denied him the right to present proof as to the proper valuation of his property, thereby, violating his constitutional right to due process. (*Id.* at ¶¶ 34-35.)

The parties agreed to mediate the matter before the Magistrate Judge. With the Magistrate Judge's assistance, the parties reached an agreement that resolved the initial lawsuit. Pursuant to the terms of the settlement, Defendant, as County Auditor,

agreed to issue Plaintiff a refund check for the amount of taxes he allegedly overpaid based on a reconfiguration of his assessed property values. For purposes of the current lawsuit, it is critical to note that the amount of the refund was not specifically prescribed by the terms of the settlement. Rather, the settlement agreement provided a range within which the refund was to fall. (*See* Case No. 5:08CV848, Doc. No. 30, Sealed Settlement Agreement, approved by the Magistrate Judge; Case No. 5:09CV2055, Doc. No. 68-1, Deposition of Darl Ferguson at 80-81; Doc. No. 68-4, Deposition of E. Leroy Van Horne at 138-39.)

With the entry of the parties' settlement agreement, approved by the Magistrate Judge, the dispute between the parties was resolved, or so it would have seemed. Pursuant to the terms of the settlement, the County Auditor's Office provided Plaintiff with a refund check, along with the figures and calculations used by the Auditor's Office to arrive at the amount of the refund. (Ferguson Dep. at 80-82.) It is undisputed that the amount of the check fell within the range specified in the settlement agreement. (*Id.* at 82; *see* Case No. 5:08CV848, Sealed Settlement Agreement.)

Plaintiff, however, disagreed with the calculations and with the amount of the refund check. On December 8, 2008, he "went into the Carroll County Auditor's office […] for the purpose of calculating his property tax years and amount." (Compl. at ¶ 14.) Specifically, Plaintiff believed that the calculations were incorrect, and he wanted to speak with someone about the perceived error. (Ferguson Dep. at 82, 85; Doc. No. 67-1 at 1.) Carol Lutton, former Deputy Auditor, advised Plaintiff that the employee who

3

performed the recalculation was out of the office.[2] (Doc. No. 68-6, Deposition of Carol Lutton at 14-15.)

What happened next is hotly contested. For purposes of summary judgment, however, the Court will view the evidence in a light most favorable to Plaintiff. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n,* 909 F.2d 941, 943-44 (6th Cir. 1990). According to Plaintiff, Defendant charged out of his private office, wagging his finger at Plaintiff, and exclaiming that "You talk to my lawyer. […] We had this all settled two weeks ago in federal court, […] and you won. […] You took all this money off of the people of Carroll County. […] You didn't take it off of me. […] And your lawyer signed all your rights away. […] Now I have you over a barrel." (Ferguson Dep. at 87-88.)  Plaintiff reminded Defendant that he was making these comments in front of witnesses. (*Id*. at 88-89; Doc. No. 68-7, Deposition of Lynn Fairclough at 75.) Nonetheless, Defendant continued to berate Plaintiff, noting that Ferguson was "supposed to be the poor sick farmer, […but] you're sitting there with diamond rings on." (Ferguson Dep. at 89.)

Defendant subsequently pressed a "panic button" under the counter, and summoned two security personnel. (Ferguson Dep. at 92; Van Horne Dep. at 129-30.) The officers arrived at the Auditor's Office and escorted Ferguson out of the office. (Lutton Dep. at 33-35; Van Horne Dep. at 130.) Plaintiff admits that, after the exchange of words with Defendant, he wanted to leave the Auditor's Office, and was not even

---

[2]Lutton was employed by Carroll County as the Deputy Auditor on December 8, 2008. She retired on December 31, 2009. (Doc. No. 68-7, Deposition of Carol Lutton at 5.)

initially aware that security personnel were present.[3] (Ferguson Dep. at 91-92.) The officers did not instruct Plaintiff to leave the Office, and did not touch, grab, or physically direct Plaintiff to leave the building. (*Id.* at 100.) They were polite to Plaintiff, sharing a laugh with him. (*Id.* at 99-101.) Further, the officers broke off their escort before Plaintiff left the building.[4] (*Id.* at 101-104.)

Following this encounter,[5] Defendant allegedly told Lutton that he was going to leave the office temporarily in order to calm down. (Lutton Dep. at 47.) "And then when he came back he said that Mr. Ferguson was not to be in the office." (*Id.*) When Lutton asked why Ferguson was not to be in the office, Van Horne explained that it was one of the "rules" of the settlement in the 2008 litigation. (*Id.*)

On September 3, 2009, Plaintiff filed the present lawsuit. At the heart of the action is the December 8, 2008 incident in the Auditor's Office. Plaintiff alleges that Defendant's treatment during the incident, and his dismissal from the Office, violated his constitutional rights. As he did in the first litigation, Plaintiff relies on 42 U.S.C. § 1983, and brings federal claims for procedural and substantive due process, equal protection,

---

[3] Specifically, Plaintiff testified that "I was wanting out of there every bit as bad as he [Van Horne] was [wanting Ferguson out of the office]." (*Id.* at 91.)

[4] Plaintiff testified that a third uniformed officer appeared, and seemed to walk him to the door. Ferguson indicated that he did not speak with her, and he admits that he is not sure that she was actually escorting him or was simply walking back to the Sheriff's Office. (*Id.* at 101-02.)

[5] Defendant tells a much different story. According to Van Horne, he immediately informed Plaintiff that if he wanted to speak to anyone regarding the recalculation, he should speak with Defendant's attorney because the parties had allegedly been told by the Magistrate Judge that they were not to have any direct contact with each other without the presence of counsel. (Van Horne Dep. at 121-23.) In fact, Defendant notes that he gave Plaintiff his attorney's business card. (*Id.* at 124; Ferguson Dep. at 92, 96-97.) According to Defendant, it was Ferguson who began hurling insults, accusing Defendant of stealing money from the public. (Van Horne Dep. at 124-25.) In an effort to defend himself, Defendant admits that he stated that if anyone was stealing money from the taxpayers it was Plaintiff via the settlement in the prior litigation. (*Id.* at 125.) When Plaintiff refused to leave after multiple requests to do so, Defendant admits that he pressed his "panic button" in an effort to have security escort Plaintiff out of the Auditor's Office. (*Id.* at 125-27.) As previously stated, however, it is Plaintiff's version of the facts that will govern the Court's consideration of the pending dispositive motion.

and municipal liability. He also brings state law actions sounding in defamation, intentional infliction of emotional distress, and gross negligence.

After the close of discovery, Defendant filed a motion for summary judgment, seeking dismissal of all claims. In her Report, the Magistrate Judge recommended that Defendant be granted summary judgment as to each cause of action. Specifically, she rejected Plaintiff's procedural due process claim upon a finding that he was afforded a pre-deprivation hearing. (Report at 12.) The Magistrate Judge also found that Plaintiff failed to plead sufficient facts to satisfy the essential elements of the remaining federal and state claims.

Plaintiff objects to each recommendation to dismiss the claims in the Complaint. (Doc. No. 81.) He claims that he has come forward with sufficient facts to establish, at a minimum, a question of material fact as to every cause of action.

**Standard**

Effective December 1, 2010, Rule 56 of the Federal Rules of Civil Procedure, addressing Summary Judgment, provides in relevant part as follows:

> **(a)** **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> [ * * *]
>
> **(c)** **Procedures.**
>
> > **(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the

6

assertion by:

    **(A)**      citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    **(B)**      showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

    **(2)**      ***Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    **(3)**      ***Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

    **(4)**      ***Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

[***]

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes*, 398 U.S. at 157; *White*, 909 F.2d at 943-44.

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**Discussion**

### A.    Procedural Due Process

As part of his first cause of action, Plaintiff alleges that Defendant denied him his constitutional right to procedural due process when he was removed from an office located within a public building. (*See, generally*, Compl. at ¶¶ 19-24.) The

Fourteenth Amendment provides, in part, that "no State […] shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Thus, to succeed on a procedural due process claim, a plaintiff must demonstrate both that he was deprived of a constitutionally protected property or liberty interest, and that the deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Kennedy v. City of Cincinnati*, 595 F.3d 327, 334 (6th Cir. 2010.) "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process." *Warren*, 411 F.3d at 708 (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)).

In her Report, the Magistrate Judge found that Defendant's conduct on December 8, 2008 violated two of Plaintiff's constitutional rights:  the right to be heard, and the right to remain in a public place. (Report at 8-9.) The Magistrate Judge further noted that Plaintiff's right to be heard, which emanated from the First Amendment right of political association, protected against state infringement under the Fourteenth Amendment, *see Williams v. Rhodes*, 393 U.S. 23, 41 (1968), was only burdened to the extent that Plaintiff "'was removed from the Auditor's Office without the opportunity to fully present his case,' that is, a "case" that has previously been litigated and settled; and has 'not had a full night's sleep since he was escorted out of the building.'" (Report at 8-9 (quoting Doc. No. 67-1 at 10, 13).)

9

The Magistrate Judge also determined that Plaintiff's right to remain in a public place, which is a liberty interest protected by the Fourteenth Amendment, was also violated. *See City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (quoting *Kent v. Dulles*, 357 U.S. 116, 126 (1958) ("It is apparent that an individual's right to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside the frontiers that is 'part of our heritage[…].'")); *Kennedy*, 595 F.3d at 336 (recognizing the right "to remain in a public place of [one's] choice").

The Magistrate Judge concluded, however, that Plaintiff was afforded pre-deprivation safeguards "via the settlement procedure […]." (Report at 13.) Citing the settlement agreement entered into by Plaintiff in the prior action, the Magistrate Judge noted that Plaintiff's "attendance at and participation in the settlement conference shows that he was provided notice and an opportunity to respond orally or in writing to matters attendant to the recalculation of his property tax and reimbursement." (*Id.* at 12.)

Plaintiff does not object to the Magistrate Judge's identification of the two constitutional rights in play, or the limited extent to which the Magistrate Judge found these rights to have been violated. Nor does he contend that he did not receive the procedural due process guaranteed him by the Constitution with respect to his right to be heard. Instead, he argues that the prior lawsuit could not have addressed his right on December 8, 2008 to remain in a public place. (Doc. No. 81 at 6.) In support of this objection, he relies on the Sixth Circuit's decision in *Kennedy, supra*.

Plaintiff's right to remain in a public place, however, cannot be considered in a vacuum. Plaintiff alleges in his Complaint that he went to the Auditor's Office, not to remain in a public place, but "for the purpose of calculating his proper tax years and

10

amount." (Compl. at ¶ 14; *see also* Doc. No. 67-1 at 1 ("On December 8, 2008, Plaintiff […] went into the Carroll County Auditor's Office for the purpose of calculating his proper tax years and amount, and also to discuss the amount of his refund check.")). As such, the constitutional rights at issue are inextricably intertwined.

Indeed, unlike the plaintiff in *Kennedy*, who simply wished to remain on public property, and was banned from a municipality's recreational property without a pre-deprivation hearing, *see Kennedy*, 595 F.3d at 333, Plaintiff went to a public place, the Auditor's Office, in order to complain that the recalculation was wrong and that the amount of the refund, though it fell within the range set forth in the settlement agreement, was insufficient. Plaintiff had a full opportunity to litigate his entitlement to a recalculation and the amount of the refund, and, having successfully negotiated this right, he cannot now say that he was deprived due process.[6]

For all of the foregoing reasons, Plaintiff's first objection is OVERRULED.

## B.  Substantive Due Process

Substantive due process "guarantees 'protection of the individual against arbitrary action of government.'" *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "'[O]nly the most egregious conduct can be said to be arbitrary in the constitutional sense […].'" *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008) (quoting *County of*

---

[6] A second distinction serves to further distance the decision in *Kennedy* from the present situation. In *Kennedy*, the plaintiff was banned from all of the city's recreational properties. *Id.* at 336. Here, Plaintiff was only asked to leave the Auditor's Office. He does not recall whether anyone escorted him out of the public building, or instructed that he must leave the building. (Ferguson Dep. at 100-04.)

*Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). The conduct must be such that it "shocks the conscience."[7] *Lewis*, 523 U.S. at 846.

The Magistrate Judge acknowledged the applicability of the "shocks the conscience" standard, but ultimately focused upon Defendant's culpability, using the "deliberate indifference" standard. She determined that Plaintiff did not come forward with facts that, if believed, would establish that Defendant was deliberately indifferent to a known risk of serious injury to Plaintiff. (Report at 15.)

Plaintiff objects to this conclusion, and suggest that the appropriate standard is that of "strict scrutiny" found in *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002). Under this standard, "where a fundamental liberty interest protected by the substantive due process component of the Fourteenth Amendment is involved, the government cannot infringe on that right 'unless the infringement is narrowly tailored to serve a compelling state interest.'" *Id*. at 502 (quoting *Wash. v. Glucksberg*, 521 U.S. 702, 721 (1997)). Believing there to be no compelling state interest that justified Defendant's violation of Plaintiff's constitutional rights, Plaintiff argues that the Magistrate Judge's recommendation that Plaintiff's substantive due process be dismissed is flawed.

Plaintiff's reliance on *Johnson* is misplaced. While *Johnson* involved the constitutionality of certain legislation restricting travel within identified high crime areas,

---

[7] As the Magistrate Judge observed, there are two types of substantive due process claims: (1) "claims asserting denial of a right, privilege, or immunity secured by the Constitution or federal statute other than procedural claims under 'the Fourteenth Amendment simpliciter;'" or (2) "claim[s] [] directed at official acts which may not occur regardless of the procedural safeguards accompanying them [...that] 'shocks the conscience' of the court." *Mertick v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (internal citations omitted).

the present litigation involves the actions of a public official. "When, as in the present case, a plaintiff complains of abusive executive action, this 'conscience shocking' test determines liability, rather than the traditional strict scrutiny standard used to measure the constitutionality of legislative acts." *Christensen v. County of Boone*, 483 F.3d 454, 462 n.2 (7th Cir. 2007) (citing *Lewis*, 523 U.S. at 846-47).

The proper standard by which Defendant's action must be tested, therefore, is that of "shocks the conscience."[8] Only the most egregious official conduct can be said to shock the conscience, *Lewis*, 523 U.S. at 846, conduct that is so egregiously wrong "by reason of its abusive or oppressive purpose and its lack of justification by any government interest." *Hawkins v. Freeman*, 195 F.3d 732, 744 (6th Cir. 1999) (citing *Lewis*, 523 U.S. at 844-55). Indeed, it must be conduct which is "so brutal and offensive that it [does] not comport with the traditional ideas of fair play and decency […]." *Lausin v. Bishko*, 2010 U.S. Dist. LEXIS 70963, at *46 (N.D. Ohio July 15, 2010) (citing *Breithaupt v. Abram*, 352 U.S. 432 (1957)). What shocks the conscience depends on the "context of the situation and each case must be judged on its own specific facts." *Id.*

---

[8] While acknowledging the "shocks the conscience" measuring stick, the Magistrate Judge ultimately employed the "deliberate indifference" standard generally reserved for cases involving police actions when officers have had time to deliberate, *see, e.g., Ewolski v. City of Brunswick*, 287 F.3d 492, 511 (6th Cir. 2002), or where a plaintiff is in police custody. *See, e.g., Hubbard v. Gross,* 199 Fed. Appx. 433, 437 (6th Cir. 2006). *See Lausin v. Bishko*, 2010 U.S. Dist. LEXIS 70963, *48 (N.D. Ohio July 15, 2010) ("Thus, in some instances, courts have applied a 'deliberate indifference' standard in cases involving police actions where the police have had time to deliberate before taking action.") Nonetheless, even where the "deliberate indifference" standard is employed to address the state actor's culpability, the question remains whether the deliberate indifference shocks the conscience. *See Lewis*, 523 U.S. at 850; *Ewolski*, 287 F.3d at 510. *See, e.g., Schroder v. City of Fort Thomas*, 412 F.3d 724, 731 (6th Cir. 2005); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 491 (6th Cir. 2002).

The facts of this case, viewed in the light most favorable to Plaintiff, do not rise to the level of conscience shocking. Plaintiff was asked to leave a public office after he informed Defendant that he wished to challenge the amount of his refund, an amount that was within the range negotiated by the parties in a prior lawsuit. If Plaintiff's version of the facts is true, as this Court must assume for purposes of summary judgment, Defendant could have dealt with Plaintiff in a far more professional manner. Nonetheless, ejecting Plaintiff from the Auditor's Office, without affording him an opportunity to revisit the terms of the settlement, and even with none too gentle language, did not rise to the level of shocking, and, therefore, did not violate Plaintiff's substantive due process rights. *See, e.g., Christensen*, 483 F.3d at 465 (police officer "stalking" an unmarried couple by watching them from a squad car did not shock the conscience); *Hawkins*, 195 F.3d at 750 (erroneously releasing prisoner prematurely and then seeking his re-incarceration did not rise to the level of shocking the conscience). Thus, the Court OVERULES Plaintiff's second objection.

### C.      Equal Protection-Class of One

Plaintiff also objects to the Magistrate Judge's recommendation that his equal protection claim be dismissed. Under the Equal Protection Clause, "[t]he states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one different from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). *See Young v. Mahoning County*, 418 F. Supp. 2d 948, 958 (N.D. Ohio 2005). In order to state an equal protection claim, a plaintiff must ordinarily "allege that a state actor intentionally discriminated against [him] because of [his] membership in a

protected class." *Young*, 418 F. Supp. 2d at 958. "[However, t]he Supreme Court has also recognized that the Equal Protection Clause gives rise to a cause of action for a 'class of one.'" *Klimik v. Kent County Sherriff's Dep't*, 91 Fed. Appx. 396, 400 (6th Cir. 2004) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To present a "class of one" due process claim, a plaintiff must demonstrate "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

Under *Olech's* "class of one" construct, the lack of a rational basis may be established in one of two ways. A "class of one" plaintiff can "negative every conceivable basis which might support" the government action. *Bower v. Mount Sterling*, 44 Fed. Appx. 670, 677 (6th Cir. 2002) (citation omitted). Alternatively, a "class of one" plaintiff may demonstrate that the challenged government action was motivated by animus or ill will. *Id*. at 678; *Warren*, 411 F.3d at 711.

Plaintiff focuses on what he believes is evidence that demonstrates that Defendant acted with animus or ill will, and cites various cases which upheld "class of one" equal protection claims where the government official acted with malicious purpose. *See, e.g., Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). He argues that the facts clearly establish that Defendant acted out of ill will when he banished Plaintiff from the Auditor's Office. (Doc. No. 18 at 13.)

Plaintiff gets ahead of himself. "The initial showing a 'class of one' plaintiff must demonstrate is that [he] was treated differently from those similarly situated." *Young*, 418 F. Supp. 2d at 959. *See Andreano v. City of Westlake*, 136 Fed. Appx. 865, 874 (6th Cir. 2005). This requires "evidence that the relevant comparison

15

[individuals] are similarly situated in all relevant respects." *Young,* 418 F. Supp. 2d at 959 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). As the Magistrate Judge observed, Plaintiff has failed to establish that he is similarly situated to others who were treated differently.

In response to Defendant's motion, Plaintiff identified as similarly situated individuals who "come into the Auditor's Office all the time and 'vent' about their tax bills […]." (Doc. No. 67-1 at 18 (citing Van Horne Dep. at 134-35).) Plaintiff is not similarly situated in all relevant respects to taxpayers who wish to complain about their taxes. There is no evidence that these unnamed individuals have had their taxes adjusted by prior litigation. The distinction is important. Those who are simply responding to their annual tax assessment have not had the benefit of a litigation wherein they received an opportunity to test both the lawfulness and reasonableness of their taxes. Having had that benefit, Plaintiff, therefore, is not similarly situated to these other individuals. As such, Plaintiff cannot maintain his equal protection claim, and Plaintiff's third objection is OVERRULED.

### D.     Official Capacity Due Process and Equal Protection

Plaintiff also seeks to hold Defendant liable in his official capacity, stemming from his duties as "Chief Financial Officer, Chief Assessor, and Chief Payroll Officer." (Doc. No. 67-1.) The Magistrate Judge rejected this *Monell* claim on the basis that Plaintiff has failed to come forward with facts that would establish the existence of a policy of custom that resulted in the deprivation of his constitutional rights. (Report at 19.) While the Magistrate Judge found that Defendant was an official "with final decision-making authority," *see Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

16

Cir. 2005), she determined that the fact that Defendant advised a subordinate employee that, pursuant to the terms of the settlement, Plaintiff was not to be in the Auditor's office discussing the settlement, did not amount to a policy. In reaching this conclusion, the Magistrate Judge noted that the fact that other citizens were permitted to come to the Auditor's Office to "vent about their tax bills," cuts against the existence of an official policy of expulsion. (Report at 19 (citing Doc. No. 67-1 at 18)).

The Court cannot accept this final observation. Plaintiff does not argue that there was a policy in place preventing all people from rearguing their taxes. Instead, he argues that "Defendant instituted a policy barring Ferguson from reentering the Auditor's Office." (Doc. No. 81 at 14; Compl. at ¶¶ 42-43.) Thus, according to Plaintiff, the policy was directed solely at him. Nonetheless, the Court agrees with the Magistrate Judge that Defendant was an official with decision-making authority. The question then becomes whether Defendant, in his official capacity, is liable for a constitutional violation that resulted from the "implementation of [the municipality's] official policies or established customs." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring).

"'Official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Spears v. City of Cleveland*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). "A municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally

17

sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Id.* (citing *Monell*, 436 U.S. at 690-91).

The only evidence Plaintiff offers in support of a policy or custom is the deposition testimony of Carol Lutton, former Deputy Auditor, who was present in the Auditor's Office on December 8, 2008, and testified as follows:

Q. After Mr. Ferguson was escorted out of the office did Mr. Van Horne make any comments in regards to that situation?

A. Mr. Van Horne said he needed to leave the office to calm down. And then when he came back he said that Mr. Ferguson was not to be in the office.

[***]

Q. Did Van Horne say anything else?

A. I think one of us must have asked him why Mr. Ferguson was not to be in the office and he said that was one of the rules of the settlement or something.

[***]

Q. Did Mr. Van Horne give any instruction as to what to do if Mr. Ferguson did come back in the office?

A. No.

Q. To your knowledge from that time of that incident to the time that you retired did Mr. Ferguson come back in?

A. No.

Q. From the time of that incident to the time you left the office or retired did Mr. Van Horne give any instructions as to what to do if Mr. Ferguson did come into the office?

A. No.

Q. So as I understand it, based on what Mr. Van Horne said, that that was one of the rules of the settlement, were you led to believe that part of the settlement was that Mr. Ferguson was not to come to that office?

A. *To discuss, yes, to discuss the values that had been involved in the settlement*.

(Lutton Dep. at 47-48, emphasis added.)[9]

This testimony fails to even raise a question of fact as to whether there was a policy or custom to ban Plaintiff from the Auditor's Office. At best, this evidence establishes Defendant's belief that Plaintiff was not to be in the Auditor's Office, or presumably anywhere else, discussing the terms of the settlement. There is no evidence that Plaintiff would not have been permitted in this public office for any other purpose, such as to discuss any future tax assessment. Indeed, there is no evidence that Plaintiff has ever tried to gain admission to the office since December 8, 2008 and been denied, or that any measures have been taken to prevent Plaintiff from doing so.

Of course, even if Plaintiff could establish the existence of a policy or custom, his official capacity claim would still fail because he cannot demonstrate that a

---

[9] While Lutton also testified that it was her understanding that Mr. Ferguson was "barred from entering the Auditor's Office in the future," she clearly perceived this banishment to only preclude Ferguson from entering the office to discuss the settlement. (*Id*. at 48.)

constitutional violation resulted in injury to him. *See Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 729 (1989); *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (6th Cir. 1995) ("[I]f [the plaintiff] fails to state a valid [constitutional] claim against [the individual capacity defendant], there would [] be no basis for holding the [municipality] liable under 1983.") Although, as previously noted, Defendant violated Plaintiff's right to be heard and his right to remain on public property, this action did not rise to the level of a violation of substantive due process or equal protection, and did not amount to a procedural due process violation because Plaintiff was afforded pre-deprivation safeguards. As such, he can point to no constitutional tort to support his *Monell* claim.

For all of these reasons, Plaintiff's fourth objection is OVERRULED. Further, because Plaintiff has failed to set forth genuine issues of material fact as to liability under 42 U.S.C. § 1983, these claims are dismissed.

### E.    Qualified Immunity

Defendant seeks qualified immunity for Plaintiff's federal claims. However, since no constitutional violation occurred, the Court need not reach the question of qualified immunity. *See Lewis*, 523 U.S. at 842, n.5 ("The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."); *Moore*, 57 F.3d at 931 ("If a plaintiff fails to state a valid [constitutional] claim, [the court] need not even reach the issue of the

qualified immunity defense.") *See, e.g., Zamorano, M.D. v. Wayne State Univ.*, 2009 U.S. Dist. LEXIS 7685, *29 (E.D. Mich. Jan. 30, 2009).

Plaintiff's fifth objection is, therefore, OVERRULED as moot.

### F.     State Law Claims

Plaintiff also raises state law claims for intentional infliction of emotional distress, defamation, and gross negligence. Because the federal claims have been dismissed, this Court DECLINES JURISDICTION under 28 U.S.C. § 1367(c)(3), and DISMISSES the state claims without prejudice. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) (quoting *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."))

Therefore, Plaintiff's sixth through ninth objections are OVERRULED as moot.

**Conclusion**

For all of the forgoing reasons, the Court ADOPTS, in part, the Magistrate Judge's Report and Recommendation. (Doc. No. 80.) Defendant's motion for summary judgment is GRANTED, in part. (Doc. No. 65.) Plaintiff's claims arising under 42 U.S.C. § 1983, including his claims for procedural and substantive due process, equal protection, and official capacity liability, are DISMISSED with prejudice. All of Plaintiff's state law claims, including his claims for intentional infliction of emotional

distress, defamation, and gross negligence, are DISMISSED without prejudice. This case is closed.

**IT IS SO ORDERED**.

Dated: January 26, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**